PHILIP SCHUYLER, Respondent, *v.* ERNEST CURTIS et al., ALICE DONLEVY et al., Appellants.

1. INJUNCTION — STATUE IN HONOR OF WOMAN. Persons attempting to erect a statue or bust of a woman who is no longer living, if their motive is to do honor to her and if the work is to be done in an appropriate manner, cannot be restrained by her surviving relatives from carrying out such purpose merely because they had not the honor of her personal acquaintance or friendship while she was living, or at most had merely been associated with her in philanthropic enterprises.

2. RIGHT OF PRIVACY — EXPIRATION ON DEATH OF PERSON. The individual right of privacy which any person has during life dies with the person, and any right of privacy which survives is a right pertaining to the living only.

3. RELATIVES — PROTECTION OF MEMORY OF DECEASED. Any privilege of surviving relatives of a deceased person to protect his memory exists for the benefit of the living to protect their feelings and to prevent a violation of their own rights in the character and memory of the deceased.

4. INJURED FEELINGS. The mere fact that a person's feelings may be injured by the erection of a statue to a deceased relative is not ground for an injunction against its erection unless there is reasonable and plausible ground for the existence of this mental distress and injury. It must not be the creation of mere caprice, nor of pure fancy, nor the result of a supersensitive and morbid mental organization dwelling with undue emphasis upon the exclusive and sacred character of this right of privacy.

5. CONSENT OF DESCENDANTS. The consent of the descendants of a deceased person is not necessary to authorize the erection of a statue of such person so long as the purpose is to do honor to the memory of the deceased, and is to be carried out in an appropriate and orderly manner by reputable individuals and for worthy ends

6. MIS-STATEMENT IN CIRCULAR — UNDUE CREDIT TO DECEASED — INTENT. A mis-statement in a circular issued by an association engaged in erecting a statue or bust of a deceased woman, by which she is said to have been the founder of the Mount Vernon Association, formed to secure the preservation of the home of Washington, while in fact she was only a vice-regent from her state, is not ground for an injunction against the erection of the statue, especially when there is nothing to show that the mis-statement was intentional or that it would not be corrected when attention was called to it.

7. FEELINGS OF PERSON IF LIVING — RIGHT OF RELATIVES. What the feelings of a woman to whose honor a statue or bust is to be erected would be if it were during her life, is not a matter for consideration in deciding as to the right of her relatives after her death to prevent such an erection to her honor.

8. JUXTAPOSITION OF STATUE OF ANOTHER. Placing the statue of a woman, now deceased, as a representative of women philanthropists, for exhibition by an association of women, in the same room of a building on the Chicago Exposition grounds with that of a representative of women reformers, does not tend to show that the former believed in or sympathized with the movement for "women's rights," of which the latter is an advocate, and does not give the surviving relatives of the former any ground for an injunction against the erection of such statue.

9. IDEAL STATUE. Making an ideal statue, which is not intended as a likeness, for exhibition as the statue of a deceased woman who is chosen as the representative of a class of women philanthropists, is not a fraud upon the public for which her surviving relatives can have an injunction against its exhibition.

     Mem. of decision below, 70 Hun, 598.

     (Argued October 22, 1895; decided November 26, 1895.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made June 22, 1893, which affirmed a judgment in favor of plaintiff granting a perpetual injunction entered upon a decision of the court on trial at Special Term.

     The plaintiff brought this action against the defendants to restrain them from making a statue or bust of the late Mrs. Mary M. Hamilton Schuyler in any form, and from causing

the same to be made or exhibited; also from receiving or soliciting subscriptions for the purpose of defraying the cost and expenses of making such bust or procuring it to be made, and also to restrain them from making use of the name of Mrs. Mary M. Hamilton Schuyler or circulating any description of her in any way in connection with the "Woman's Memorial Fund Association" mentioned in the record. The findings of the court upon the trial of the action state what is material as to the facts upon which the action is based, while the conclusions of law show the theory upon which relief has been granted.

The court has found among other facts the following: The plaintiff is the only son of George L. Schuyler, late of the city of New York, and of Eliza Hamilton Schuyler, his wife, who was a daughter of the late James A. Hamilton and granddaughter of Major-General Alexander Hamilton. Mrs. Schuyler died in the year 1863, and plaintiff's father for his second wife married Mary Morris Hamilton, a younger sister of his first wife. The second Mrs. Schuyler died in May, 1877, leaving no children. Her husband died in July, 1890, and her only brother died in December, 1889. The only immediate relatives, now living, of the second Mrs. Schuyler are certain nephews and nieces, an uncle and an aunt, all of whom approve of the commencement and maintenance of this action. The defendants other than Hartley are members of a voluntary and unincorporated association in New York city named "The Woman's Memorial Fund," and its avowed object was the completion of two sculptures to honor "Woman as the Philanthropist" and "Woman as the Reformer," to be placed on exhibition at the Columbian Exposition of 1893. This association in May, 1891, publicly announced that "as the typical Philanthropist, Mary M. Hamilton, who died Mrs. G. L. Schuyler, has been chosen as the subject of the statue," and about that time the association began to send printed circulars to that effect and to solicit subscriptions for the purpose of carrying out this project, and public announcement was made that a contract had been entered into with the defend-

ant Hartley, a professional sculptor, for the execution of a statue of Mrs. Schuyler to be placed on exhibition as stated.

It was also announced that the association intended to place the statue on exhibition at the same time and place as a statue of Miss Susan B. Anthony, whom the association had chosen as the subject of the statue to be designated the "Representative Reformer." George L. Schuyler, the husband, and Alexander Hamilton, the brother, of the deceased Mrs. Schuyler, were at the time when the association claims to have originated the plan for making the statue living in New York, but no application was made to either for his consent to the making of the statue and neither of them ever authorized any one to make it. Subsequent to the deaths of the husband and brother of Mrs. Schuyler, and in May, 1891, the plaintiff first heard of the contemplated action of the defendants, and he, in behalf of himself and also of the other relatives of Mrs. Schuyler, requested the defendants to abandon the making of such statue and the circulation of subscription papers for the purpose of collecting money towards defraying the cost and expenses of procuring the statue. The defendants denied the right of the plaintiff to prevent the making of the statue or to prevent their soliciting subscriptions throughout the country for that purpose, and they continued to circulate such subscription papers widely throughout the United States, and they were printed in some of the New York city newspapers at the instance of the defendants.

These acts, the court finds, have exposed the name and the memory of Mrs. Mary M. Hamilton Schuyler to adverse comment and criticism of a nature peculiarly disagreeable to her relatives and have caused disagreeable notoriety for which they are in no way responsible; that such comment has been made in the public prints and elsewhere; that annoyance and pain have been caused thereby to the plaintiff and to the immediate relatives of Mrs. Schuyler; that he and they have been greatly distressed and injured thereby and by the notoriety incident thereto; and that such notoriety and adverse comment and criticism are wholly due to the unau-

thorized acts of the defendants. As conclusions of law it was found that the acts of defendants constituted an unlawful interference with the right of privacy, and that the surviving relatives of the deceased Mary Schuyler were specially injured by the acts.

It was, therefore, adjudged that the plaintiff was entitled to judgment perpetually enjoining the defendants from making or causing to be made a statue of Mrs. Schuyler in any form and from exhibiting any statue of her and from receiving subscriptions for the purposes stated.

Upon the trial evidence was given upon the part of the defendants which showed that Mrs. Schuyler in her lifetime was a very charitable woman ; was a member of many private charitable associations; that in 1852 she was one of the founders of the School of Design for Women in the city of New York and one of its managers until it was adopted by the Cooper Institute ; that some of the female defendants were members of the School of Design for Women and had frequently met Mrs. Schuyler at its meetings and were on terms of some intimacy with her so far at least as her interest in and her attendance at the meetings of the above association called for ; that the " Ladies Art Association " was founded about 1867, partly at the suggestion of Mrs. Schuyler made to some of the defendants who were members of the School of Design for Women, the object of the association being to help ladies support themselves and to give them adequate education in art and design, and the association is a reputable and well-known organization in New York city, and Mrs. Schuyler evinced considerable interest in it during her life ; that the " Woman's Memorial Fund Association " was composed largely of members of the " Ladies Art Association," and it was publicly announced that the statue in question was to be placed after the exposition in the rooms or studio of the association, there to remain permanently ; that Mrs. Schuyler was prominently identified with the U. S. Sanitary Commission during the late war ; and also that she was one of the vice-regents for the state of New York of the Mt. Vernon

Association which was organized for the purpose of securing the preservation of the home of Washington. These several facts were proved and were uncontradicted, and the defendants requested the court to find them, which request was refused on the ground that they were immaterial.

*Charles M. Demond* and *Walter S. Logan* for appellants. This appeal presents real issues, and not merely abstract questions of law. (*People ex rel.* v. *Com. Council, Troy,* 82 N. Y. 575; *Bryant* v. *Thompson,* 128 N. Y. 426; *In re Manning,* 139 N. Y. 446; *Fleischmann* v. *Fleischmann,* 80 Hun, 90; *Grow* v. *Garlock,* 29 Hun, 598; *C. U. Bank* v. *Smith,* 40 N. Y. S. R. 758; *People* v. *Corwin,* 68 N. Y. 403.) The court below had absolutely no jurisdiction to grant the relief asked. (Townshend on Libel, 2, 3, 118; Holt on Libel, 244; 1 Wood's Inst. 445; *Regina* v. *Labouchere,* L. R. [12 Q. B. D.] 320; *Commonwealth* v. *Batchelder,* Thatch. Crim. Cas. 191; *State* v. *Farley,* 4 McCord, 317; 1 Hilliard on Torts, chap. 7, § 13; *Commonwealth* v. *Clapp,* 4 Mass. 163–168; *State* v. *Jeandell,* 5 Harr. 475; *White* v. *Nichols,* 3 How. [U. S.] 266; *Root* v. *King,* 7 Cow. 613; *People* v. *Croswell,* 3 Johns. Cas. 354; *Steele* v. *Southwick,* 9 Johns. 214; *Cooper* v. *Greeley,* 1 Den. 347; Penal Code, § 242; *N. Y. J. G. Soc.* v. *Roosevelt,* 7 Daly, 177; *Brandreth* v. *Lance,* 8 Paige, 27; *Wetmore* v. *Scovel,* 3 Edm. Ch. 515; *Hoyt* v. *Mackenzie,* 3 Barb. Ch. 320; *Mauger* v. *Dick,* 55 How. Pr. 132; *B. D. Co.* v. *F. Co.,* 114 Mass. 169; *L. Assn.* v. *Boogher,* 3 Mo. App. 173; *Clark* v. *Freeman,* 11 Beav. 11; *Liverpool Assn.* v. *Smith,* L. R. [37 Ch. Div.] 170; *Mulkern* v. *Ward,* L. R. [13 Eq.] 619; *P. Ins. Co.* v. *Knott,* L. R. [10 Ch. App.] 142; *Raymond* v. *Russell,* 143 Mass. 295; *Kidd* v. *Horry,* 28 Fed. Rep. 773; *Whitehead* v. *Kitson,* 119 Mass. 484; *C. Gas Co.* v. *K. Co.,* 100 Mo. 501; *Halsey* v. *Brotherhood,* L. R. [19 Ch. Div.] 386; *Chase* v. *Tuttle,* 27 Fed. Rep. 190; *Quartzmill* v. *Beall,* L. R. [20 Ch. Div.] 501; Const. N. Y. [1846] art. 1, § 8; *Corliss* v. *Walker,* 57 Fed. Rep. 434; *In re Sawyer,* 124 U. S. 200; Kerr on Injunc. [2d ed.] 1.) The plaintiff had absolutely

no cause of action. (*Murray* v. *G. L. & E. Co.*, 49 Alb. L. J. 288; *In re Sawyer*, 124 U. S. 200; *Chapman* v. *W. U. T. Co.*, 88 Ga. 763.) The fancied injury to the plaintiff complained of in this action, if any such injury can in any way be discovered, is certainly not such an injury as the court will grant an injunction to prevent. (*Murray* v. *G. L. & E. Co.*, 49 Alb. L. J. 288; *In re Sawyer*, 124 U. S. 200.) The decision of the court below was erroneous. (*James* v. *Cowing*, 82 N. Y. 449; *Van Bokkelen* v. *Berdell*, 130 N. Y. 141.)

*James B. Ludlow* and *Augustus N. Hand* for respondent. The acts of the defendants in seeking to make and exhibit a statue of Mrs. Schuyler and in soliciting subscriptions therefor, constitute an unwarrantable invasion of the right of privacy, for which no adequate remedy exists at common law, and which, therefore, falls within the jurisdiction of a court of equity to redress. (Cooley on Torts, 19; Salkowski's Roman Law, 668, § 134; *Pope* v. *Curl*, 2 Atk. 342; *Gee* v. *Pritchard*, 2 Swanst. 402; *Percival* v. *Phipps*, 2 Ves. & B. 19; *Prince Albert* v. *Strange*, 2 DeGex & Sm. 652, 691–696; 1 McN. & G. 25, 42; *Woolsey* v. *Judd*, 4 Duer, 379; Laws of 1895, chap. 287; 4 Harv. Law Rev. 201; *Payne* v. *People*, 6 Johns. 103; *Eyre* v. *Higbee*, 35 Barb. 502; *Oliver* v. *Oliver*, 11 C. B. [N. S.] 139; *Grigsby* v. *Breckinridge*, 2 Bush [Ky.], 480; *Wynehamer* v. *People*, 13 N. Y. 433; *Eaton* v. *R. R. Co.*, 51 N. H. 511; 4 Bradf. on Surr. 516; Austin on Juris. 47; *Routh* v. *Webster*, 10 Beav. 561; *Dixon* v. *Holden*, L. R. [7 Eq.] 488; *S. S. Co.* v. *Riley*, L. R. [6 Eq.] 551; *Maxwell* v. *Hogg*, L. R. [2 Ch.] 307; *Mackenzie* v. *S. M. S. Co.*, 27 Abb. [N. C.] 402; *F. L. & T. Co. Case*, 21 Abb. [N. C.] 104; *Pollard* v. *P. Co.*, L. R. [40 Ch. Div.] 345; *Tuck* v. *Priester*, L. R. [19 Q. B. Div.] 629; *Corliss* v. *Walker*, 57 Fed. Rep. 434, 435, 436; 64 Fed. Rep. 280, 281; *Marks* v. *Jaffa*, 6 Misc. Rep. 290; *Mitchell* v. *Thorne*, 134 N. Y. 536; *Snyder* v. *Snyder*, 60 How. Pr. 368; *Thompson* v. *Hickey*, 8 Abb. [N. C.] 159; *Secor* v. *Secor*, 18 Abb. [N. C.] 80; *Weld* v. *Walker*, 130 Mass. 422; *Pierce* v. *Proprie-*

*tors, etc.*, 10 R. I. 227 ; *In re Girard*, 1 Moak's Eng. Rep.
664 ; *Church* v. *Church*, 2 Brewst. [Pa.] 372 ; *Wynkoop* v.
*Wynkoop*, 42 Penn. St. 293 ; *Trustees* v. *Walsh*, 57 Ill.
363 ; *State* v. *McClure*, 4 Blackf. 329 ; *Bogert* v. *City
of Indianapolis*, 13 Ind. 134 ; *Renihan* v. *Wright*, 125
Ind. 536, 543 ; *Guthrie* v. *Weaver*, 1 Mo. App. 136 ;
*Brandreth* v. *Lance*, 8 Paige, 24 ; *N. Y. J. Society* v.
*Roosevelt*, 7 Daly, 188 ; *State* v. *Warren*, 113 N. C. 683.)
The facts in this case and the circumstances under which the
litigation arose appeal with peculiar force to a court of equity.
(1 McN. & G. 46 ; 4 Duer, 384 ; *Bonnard* v. *Perryman*, L.
R. [1891] [2 Ch.] 269 ; *Collard* v. *Marshall*, L. R. [1892] [1
Ch.] 571 ; *Monson* v. *Tussauds*, L. R. [1894] [1 Q. B.] 671 ;
*Corliss* v. *Walker*, 64 Fed. Rep. 280.)   The plaintiff is enti-
tled to sue for an injunction. (*Pollard* v. *P. Co.*, L. R. [40
Ch. Div.] 345 ; *Pierce* v. *Proprietors, etc.*, 10 R. I. 227 ;
*Snyder* v. *Snyder*, 60 How. Pr. 368 ; *Walworth* v. *Holt*, 4 M.
& C. 619 ; *Mitchell* v. *Thorne*, 134 N. Y. 536 ; 4 Am. L.
Times, 127 ; 6 Am. L. Rev. 182 ; 4 Bradf. on Surr. 529.)
The defendants were properly enjoined from carrying out
their project of making and exhibiting a statue of Mrs. Schuy-
ler, on the ground that it necessarily involved both a breach
of confidence and a fraud on the public. (*Devlin* v. *Devlin*,
69 N. Y. 212 ; *Caswell* v. *Hazard*, 121 N. Y. 484 ; *Duffy* v.
*Masterson*, 44 N. Y. 557 ; *Newman* v. *Frost*, 52 N. Y. 422,
427, 428 ; *Marvin* v. *B. I. M. Co.*, 55 N. Y. 538, 547, 560 ;
*Ogden* v. *Alexander*, 140 N. Y. 356 ; *F. N. Bank* v.
*Chalmers*, 144 N. Y. 432, 436.)   The relief granted to the
plaintiff rests upon sound principles of law and of natural jus-
tice. (27 Abb. [N. C.] 400 ; 5 Coke's Rep. 125 ; *Corliss* v.
*Walker*, 57 Fed. Rep. 434 ; 64 Fed. Rep. 280.)   The excep-
tions to rulings made on the trial, on questions of evidence,
present no questions of importance, and may be disregarded.
(*Donovan* v. *Clark*, 138 N. Y. 631, 633 ; *Galle* v. *Tode*, 74
Hun, 542, 550.)   The exceptions to the refusals of the find-
ings of facts and conclusions of law proposed by the defend-
ants are untenable. (Code Civ. Pro. § 1022 ; *McCulloch* v.

*Dobson,* 133 N. Y. 114; *Livingston* v. *M. R. Co.,* 17 N. Y. Supp. 486; *Uhlenhaut* v. *M. R. Co.,* 18 N. Y. Supp. 797; *Hunter* v. *M. R. Co.,* 19 N. Y. Supp. 703; *Pach* v. *Geoffrey,* 67 Hun, 401; *Crim* v. *Starkweather,* 136 N. Y. 635; *Callahan* v. *Gilman,* 107 N. Y. 360; *Glacius* v. *Black,* 50 N. Y. 145; *McAndrew* v. *Whitlock,* 52 N. Y. 40; *Comey* v. *Andrews,* 14 N. Y. S. R. 673; *Livingston* v. *M. R. Co.,* 17 N. Y. Supp. 486; *Stewart* v. *Morss,* 79 N. Y. 629; *Baldwin* v. *Doying,* 114 N. Y. 452; *Galle* v. *Tode,* 74 Hun, 542; Laws of 1894, chap. 688; *Lazarus* v. *M. E. R. Co.,* 145 N. Y. 581.)   The appeal should be dismissed upon either of two grounds, that the matter in controversy does not involve the sum of $500, or that no practical question is presented as to which the decision of this court can be operative. (*Batterman* v. *Finn,* 40 N. Y. 340; *State* v. *County of Kings,* 125 N. Y. 323; Code Civ. Pro. § 191, subd. 3; *Roosevelt* v. *Linkert,* 67 N. Y. 447; *Knapp* v. *Deyo,* 108 N. Y. 518; *Campbell* v. *Mandeville,* 110 N. Y. 628; *Squire* v. *McDonald,* 138 N. Y. 554; *People* v. *Horton,* 64 N. Y. 58; *In re Manning,* 139 N. Y. 448; *People* v. *Troy,* 82 N. Y. 572; *People* v. *Squire,* 110 N. Y. 666.)

PECKHAM, J.   This action is of a nature somewhat unusual and depends for its support upon an application of certain principles which are themselves not very clearly defined or their boundaries very well recognized or plainly laid down. Briefly described the action is founded upon an alleged violation of what is termed the right of privacy.   The alleged violation of this right, so far as regards the plaintiff, consists of an attempt on the part of certain reputable women, among them the female defendants herein, without the sanction of the plaintiff or other immediate members of the family, to do honor to the memory of a woman who was the aunt of the plaintiff, and who, at the time of the commencement of this action, had been dead for fourteen years.   A statue, of a most costly and meritorious kind, to be made out of appropriate material and by an artist of the first rank, was contem-

plated as the means of doing this honor to the memory of the deceased relative of the plaintiff.

It may, perhaps, be somewhat difficult for the ordinary mind to perceive any reason for the plaintiff's distress arising out of this contemplated action by women of respectability who are desirous of honoring the memory of a woman whom they regarded in life as a friend and benefactor of their sex. Objection has, however, been made to the carrying out of this project, and we must examine this record in order to see whether there is any evidence of a violation of this alleged right of privacy belonging to the plaintiff. In order to determine whether there has been a violation of the right it is necessary to know something about the right itself and its proper limitations. It is not necessary, however, in the view which we take of this case, to attempt to lay down precise and accurate rules which shall apply to all cases touching upon this alleged right. If the facts in any case fail to furnish any clear or sure foundation for a reasonable man to claim that any injury to his feelings has been or would be caused by the action taken, or to be taken, by a defendant, then we can at least say in such a case that there has not been and cannot be any such real mental distress or injury as a court of equity ought to recognize as within judicial relief. For the purpose we have in view it is unnecessary to wholly deny the existence of the right of privacy to which the plaintiff appeals as the foundation of his cause of action. It may be admitted that courts have power in some cases to enjoin the doing of an act where the nature or character of the act itself is well calculated to wound the sensibilities of an individual, and where the doing of the act is wholly unjustifiable, and is, in legal contemplation, a wrong, even though the existence of no property, as that term is usually used, is involved in the subject.

The question in this case is whether there has been proved such a violation of the rights of the plaintiff, even under a most liberal construction as to the extent of those rights, which a court of equity ought to take cognizance of.

We enter upon this examination with an admission for the purposes of this case that the plaintiff occupies such a relationship to the deceased that he might maintain an action to enjoin the painting of a picture or the making of a statue of the deceased which would be regarded as inappropriate by reasonable people because the use for which it was destined or the place where it was to be kept was obviously improper, or because the thing itself, portrait or bust or statue, was not of that degree of merit, all the circumstances considered, which might reasonably and properly be insisted upon by those to whom the life and memory of the deceased were most dear.    Many other cases can be imagined where the ulterior purpose of the individuals engaged in the matter would be so manifestly improper, if not illegal, that no statue or picture of a reputable individual, alive or dead, ought to be permitted to be made for such purpose.    These are merely imaginary cases, alluded to only for the purpose of accentuating our ideas as to some of the circumstances in which courts might be called upon to act on the part of a living relative of one who was long since dead.  In the present case the grounds of the plaintiff's objection are not very many, and have been stated in the complaint and by the plaintiff on the witness stand. They are these :

1. The persons concerned in getting up the proposed statue were not the friends of the plaintiff's deceased aunt and, as plaintiff alleged, did not know her.

2. They were proceeding with their plan without consulting with the plaintiff or other immediate members of the Schuyler-Hamilton family and without their consent to the making of any statue.

3. The circulars issued by or in behalf of the defendants contained a statement that Mrs. Schuyler was the founder of or the first woman in the enterprise for securing the home of Washington, and that this statement was inaccurate because a prominent woman in South Carolina was in fact such founder and justly entitled to the honor arising therefrom.    This mistake, it was asserted, had caused adverse comment in the news-

papers as to the attitude of the family of plaintiff in permitting such a claim to be made when they must have known it was without foundation.

4. It was disagreeable to the plaintiff because the making of such a statue would have been disagreeable and obnoxious to his aunt were she living. She had, as plaintiff said, a great dislike to have her name brought into public notoriety of any kind, as she was a singularly sensitive woman and of a very retiring nature, anxious to keep her name from the public prints or newspapers.

5. That plaintiff's aunt had not been personally acquainted with Susan B. Anthony, and he was quite sure she had not sympathized with or approved the position taken by Miss Anthony upon the question of the proper sphere of woman and her treatment by the law, and it was disagreeable and annoying to have the memory of Mrs. Schuyler joined with principles of which she did not approve.

These are substantially all the objections taken by plaintiff regarding the proposed action of the defendants. The plaintiff in his evidence said he did not claim that the defendants, in any of their actions or in any of their published notices, threw any discredit, disgrace or ridicule upon Mrs. Schuyler's memory, and he did not think they wished to do so in any way. The chief reason for bringing this action, the plaintiff avowed, was to establish a principle that the right of privacy should be respected, and he was willing to bring such an action for the purpose of maintaining that principle.

After taking all these objections into careful consideration, we cannot say that we are in the least degree impressed with their force. The first ground of objection, even if well founded in fact, is not of the slightest importance. Whether the defendants were friends or not of Mrs. Schuyler in her lifetime does not seem to us to have any legitimate effect upon the question. If the motive were to do honor to a good woman, and if the work were to be done in an appropriate way, the relations towards the deceased of those who proposed to render this mark of honor to her memory as one of

the benefactors of her sex, would be a matter of very small moment, entitled to no consideration whatever. No surviving relative, male or female, would have, in our judgment, the least ground of complaint that an action, confessedly meant to do honor to the memory of a noble woman, was proposed by those who in her lifetime had not the honor of her personal acquaintance or friendship, but whose proposed action was nevertheless the outgrowth of admiration of her character as a friend and benefactor of the sex of which she was herself so great an ornament. It appears, however, that in truth some of the defendants were known to Mrs. Schuyler personally as members of the same association and interested in the same objects, and although Mrs. Schuyler was undoubtedly more socially prominent than any of the defendants claim to be, yet there was enough personal intercourse between her and some of the defendants to account for the affection in which her memory is held and for their desire to give some practical evidence of their feelings.

The second ground of objection we think is equally untenable. The fourth ground may properly be considered as a part of it. It is true that these defendants have assumed to take the preliminary steps leading to the making of the proposed statue without having consulted with or obtained the consent of the plaintiff or the other immediate relatives of the deceased. This may be regarded as the main objection, the others being but grounds for the refusal of any consent by plaintiff and his relatives, if such consent had been asked. The whole of the plaintiff's claim of the right of privacy in this case rests upon the lack of this consent. It is stated that Mrs. Schuyler was not in any sense a public character during her life, and consequently had not surrendered to any extent whatever her own right of privacy. This right, it is claimed, not having been surrendered by any act of the deceased in her lifetime, descends unimpaired to her immediate relatives as the proper representatives of her feelings and her rights. Whatever the rights of a relative may be, they are not in such a case as this, rights which once belonged to the deceased, and

which a relative can enforce in her behalf and in a mere
representative capacity, as, for instance, an executor or admin-
istrator, in regard to the assets of a deceased. It is not a ques-
tion of what right of privacy Mrs. Schuyler had in her life-
time. The plaintiff does not represent that right. Whatever
right of privacy Mrs. Schuyler had died with her. Death
deprives us all of rights in the legal sense of that term, and,
when Mrs. Schuyler died, her own individual right of privacy,
whatever it may have been, expired at the same time. The
right which survived (however extensive or limited) was a
right pertaining to the living only. It is the right of privacy
of the living which it is sought to enforce here. That right
may, in some cases, be itself violated by improperly interfer-
ing with the character or memory of a deceased relative, but
it is the right of the living and not that of the dead which is
recognized. A privilege may be given the surviving relatives
of a deceased person to protect his memory, but the privilege
exists for the benefit of the living, to protect their feelings
and to prevent a violation of their own rights in the character
and memory of the deceased.

A woman like Mrs. Schuyler may very well in her lifetime
have been most strongly averse to any public notice, even if it
were of a most flattering nature, regarding her own works or
position. She may have been (and the evidence tends most
strongly to show that she was) of so modest and retiring
a nature that any publicity, during her life, would have been
to her most extremely disagreeable and obnoxious. All these
feelings died with her. It is wholly incredible that any
individual could dwell with feelings of distress or anguish
upon the thought that, after his death, those whose wel-
fare he had toiled for in life would inaugurate a project to
erect a statue in token of their appreciation of his efforts and
in honor of his memory. This applies as well to the most
refined and retiring woman as to a public man. It is, there-
fore, impossible to credit the existence of any real mental
injury or distress to a surviving relative grounded upon the

idea that the action proposed in honor of his ancestor would have been disagreeable to that ancestor during his life.

We cannot assent to the proposition that one situated as the plaintiff in this case can properly enjoin such action as the defendants propose on the ground that as mere matter of fact his feelings would be thereby injured. We hold that in this class of cases there must in addition be some reasonable and plausible ground for the existence of this mental distress and injury. It must not be the creation of mere caprice nor of pure fancy, nor the result of a supersensitive and morbid mental organization, dwelling with undue emphasis upon the exclusive and sacred character of this right of privacy. Such a class of mind might regard the right as interfered with and violated by the least reference even of a complimentary nature to some illustrious ancestor without first seeking for and obtaining the consent of his descendants. Feelings that are thus easily and unnaturally injured and distressed under such circumstances are much too sensitive to be recognized by any purely earthly tribunal. A proposed act which a court will enjoin because it would be a violation of a legal right, must, among other conditions, be of such a nature as a reasonable man can see might and probably would cause mental distress and injury to any one possessed of ordinary feeling and intelligence, situated in like circumstances as the complainant, and this question must always to some extent be one of law.

If the circumstances be such that it is to a court inconceivable that the feelings of any sane and reasonable person could be injured by the proposed act, then it is the duty of the court to say so and to refuse an injunction which would prevent its performance.

If the defendants had projected such a work in the lifetime of Mrs. Schuyler, it would perhaps have been a violation of her individual right of privacy, because it might be contended that she had never occupied such a position towards the public as would have authorized such action by any one so long as it was in opposition to her wishes. The fact that Mrs. Schuyler

is dead alters the case, and the plaintiff and other relatives must show some right of their own violated, and that proof is not made by evidence that the proposed action of the defendants would have caused Mrs. Schuyler pain if she were living. A shy, sensitive, retiring woman might naturally be extremely reluctant to have her praises sounded, or even appropriate honors accorded her while living, and the same woman might, upon good grounds, believe with entire complacency and satisfaction that after her death a proposition would be made and carried out by her admirers to do honor to her memory by the erection of a statue or some other memorial.

For these reasons we are of the opinion that regarding the facts thus far discussed, it was not necessary for the defendants to procure the consent of the plaintiff or other immediate relatives of the deceased. We think that so long as the real and honest purpose is to do honor to the memory of one who is deceased, and such purpose is to be carried out in an appropriate and orderly manner, by reputable individuals and for worthy ends, the consent of the descendants of such deceased person is not necessary, and they have no right to prevent, for their own personal gratification, any action of the nature described.

The third ground of objection is based upon a claim made in the circulars issued by defendants that Mrs. Schuyler was the founder of the Mt. Vernon Association, while in truth she was connected with it only as a vice-regent from this state. There is no assertion that this error of fact was intentional, and there could obviously be no motive on the part of the defendants to make any undue or ill-founded claim on behalf of their subject. A single line calling their attention to the fact would undoubtedly have caused an immediate rectification of the mistake, and of course the removal of any foundation for the slightest adverse comment from any source as to the conduct of the surviving members of this family in permitting such a claim to have been made on behalf of one of its deceased members.

This mistaken statement of the position of Mrs. Schuyler in

57

regard to the Mt. Vernon Association contained in the circulars is the only ground for adverse comment in the newspapers, or for the disagreeable notoriety complained of by the plaintiff. If corrected all ground of complaint of that nature would disappear. If not corrected upon application, the plaintiff would probably not be without a remedy which would prevent the circulation of such an untruth.

The fourth ground of objection has already been disposed of in treating of the second. The feelings of the deceased, if she were alive and confronted with such a proposition to do honor to herself, have no place in this action, which is founded upon the alleged violation of the plaintiff's own right of privacy.

The fifth ground is an equally vague and shadowy one. Whether Mrs. Schuyler sympathized with the work or the views of Miss Anthony we must say seems to us utterly foreign to the subject. There was no proposition looking towards the placing the statues of these two ladies together as representatives of the same ideas, or as in any way, even the remotest, united in the same works, or in inculcating the same principles in regard to the rights of women. The objection seems to rest wholly upon the proposition that these two proposed statues were to be exhibited in the same room of a building in the Chicago fair grounds — one as the representative of a class of women philanthropists and the other as the representative of a class of women reformers. The placing of the statues in the same room for exhibition by the same association does not in our view tend in the slightest degree to confuse the identity of Mrs. Schuyler, or to lead in any way to the supposition that she was in sympathy with or believed in the correctness of the principles which have been advocated by Miss Anthony.

The fact, if it be a fact, that Mrs. Schuyler did not sympathize with what is termed the "Woman's Rights" movement is of no importance here. The proposed placing of the two statues would, if carried out, have had no tendency to show that Mrs. Schuyler did so sympathize. Many of us may, and

probably do, totally disagree with these advanced views of
Miss Anthony in regard to the proper sphere of women, and
yet it is impossible to deny to her the possession of many of
the ennobling qualities which tend to the making of great
lives. She has given the most unselfish devotion of a long
life to what she has considered would tend most for the bene-
fit and practical improvement of her sex, and she has thus
lived almost literally in the face of the whole world, and dur-
ing that period there has never been a single shadow of any
dark or ugly fact connected with her or her way of life to
dim the lustre of her achievements and of her efforts.
Although we may utterly fail to sympathize with these efforts
or achievements, it is plain enough that no one will have rea-
sonable ground for objection to the placing of a bust of his or
her own ancestor in the same room with the bust of such a
woman and under such circumstances as were originally con-
templated by these defendants. This ground of objection,
however, time has itself rendered valueless.

One other ground has been argued before us upon which to
sustain this injunction. It was urged that the proposed statue
would be a fraud upon the public because there was no por-
trait, likeness or statue of Mrs. Schuyler accessible to defend-
ants from which any possible likeness of the deceased could
be secured. The idea of an actual likeness was early aban-
doned, and it was stated that the statue would be an ideal one
and not a likeness. The court below has not found any fraud
and we are not of the opinion that any was shown.

While not assuming to decide what this right of privacy is in
all cases, we are quite clear that such right would not be violated
by the proposed action of the defendants. The plaintiff's
cause of action is, we think, wholly fanciful. The defend-
ants' contemplated action is not such as might be regarded by
reasonable and healthy minds as in the slightest degree dis-
tressing or tending in the least to any injury to those feelings
of respect and tenderness for the memory of the dead which
most of us possess, and which ought to be considered as a
proper subject of recognition and protection by civilized courts.

It is, perhaps, needless, yet we will add that our decision furnishes, as we think, not the slightest occasion for the belief that under it the feelings of relatives or friends may be outraged or the memory of a deceased person degraded with impunity by any person who may thus desire to affect the living. The rights of such persons will remain the same after as they were before our present decision and will be wholly unaffected by it. We simply say that in this case the defendants have proposed to do nothing which ought to affect unpleasantly the mental condition of any sound, reasonable and intelligent man or woman, and, therefore, an injunction ought to have been refused.

We have looked at the question of the appealability of the judgment, and are of the opinion that the court has jurisdiction. Nor do we think that the question is now merely an abstract one because of the fact that it was the intention of the defendants in causing the statue to be made to place the same on exhibition in one of the buildings at the Chicago exposition, now past and gone. That was only one of the purposes of the defendants. They intended to retain the statue after the exhibition and bring it back to New York and place it in the studio of the Ladies Art Association, a place which so far as the evidence shows is appropriate for the purpose. This intention is not illegal and might be properly carried out but for this injunction.

Upon the whole we are of the opinion that the plaintiff has made a mistake in his choice of this case as an appropriate one in which to ask for the enforcement of the right of privacy.

The judgment must be reversed as to the parties appealing and the complaint dismissed as to them, with costs.

GRAY, J. (dissenting). I must emphatically dissent from the decision of this court that there was no ground shown in this case for the equitable relief which was granted below. That a precisely analogous case may not have arisen heretofore, in which the peculiar power of a court of equity to grant relief by way of injunction has been exercised, furnishes no

reason against the assumption of jurisdiction. This equitable jurisdiction of the court is determined by the particular circumstances of each particular case and depends upon the existence of a state of facts which demonstrates a wrongful act performed, or threatened to be performed, to the prejudice of some right of property and for which there is no adequate remedy at law.

Upon the findings in this case, I think we are bound to say that the purpose of the defendants was to commit an act which was an unauthorized invasion of the plaintiff's right to the preservation of the name and memory of Mrs. Schuyler intact from public comment and criticism. As the representative of all her immediate living relatives, it was competent for him to maintain an action to preserve them from becoming public property; as would be the case if a statue were erected by strangers, for public exhibition under such classification, with respect to the characteristic virtues of the deceased, as they judged befitting. I cannot see why the right of privacy is not a form of property, as much as is the right of complete immunity of one's person. If it is a property right with reference to the publication of a catalogue of private etchings and entitled to be protected against invasion, as Lord COTTENHAM held in *Prince Albert* v. *Strange*, (1 Macn. & G. 25, 47), why is it not such with reference to name and reputation? We have some illustrations of the exercise by courts of equity of their peculiar powers in cases which have been cited, in principle not unlike this; where the publication of one's letters and the sales of photographic portraits have been enjoined, besides the case of the publication of the catalogue referred to. (See *Gee* v. *Pritchard*, 2 Swanst. 402; *Prince Albert* v. *Strange*, 2 De G. & Sm. 652; *Pollard* v. *Photog. Co.*, L. R., 40 Ch. D. 345, and *Woolsey* v. *Judd*, 4 Duer, 379.) These decisions are authority for the doctrine that equity will interfere to prevent what are deemed to be violations of personal legal rights and the only limitation upon the application is that the legal right which is to be protected shall be one cognizable as property. It seems to me

clear that the jurisdiction of equity is not made to depend upon the existence of corporeal property and that it is exercised whenever the complainant establishes his claim to the possession of exclusive personal rights and their violation in definite ways; for which an action at law cannot afford plain and adequate redress. That is the case here. The defendants were a voluntary, unincorporated association; whose object was to erect a statue of Mrs. Schuyler as the "typical philanthropist," and subscriptions were solicited from the public to create a fund for that purpose. It was found by the trial court that the acts of the defendants "have exposed the name and the memory of Mrs. Schuyler to adverse comment and public criticism of a nature peculiarly disagreeable to her relatives, and have caused disagreeable notoriety, for which they are in no way responsible." It was found that "annoyance and pain have been caused thereby to the plaintiff and to the immediate relatives of Mrs. Schuyler," to their great distress and injury, by the notoriety incident thereto.

However opinions may differ with respect to the substantial nature of the injury to the feelings of Mrs. Schuyler's relatives, we have the finding that it was in fact caused, and we should not say that it was merely fanciful. The theory of the case, which calls for equitable relief, is not that of a mere protection to wounded feelings; but the protection of a right which those who represent the deceased have to her name and memory as a family heritage and which had not become the public property. Why is that not a legal and an exclusive interest and why are its possessors not entitled to be protected by the law from a notoriety which invites public criticism of the memory and reputation of the deceased relative? And if it be true that there is no known application at common law of the principle, does not that natural justice with which equity is synonymous require that equity supply the deficiency, or enlarge the operation of legal principles, and grant the shelter of the law to the name and memory of the deceased, at the instance of her relatives?

The evidence does not establish that Mrs. Schuyler was a

public character, nor that she was in such public station, or so prominent in public works, as to make her name and memory public property. That she was engaged, throughout her life, in acts of benevolence and beneficence, may be perfectly true; but she was never a public character and in no just sense can it be said that, because of what she chose to do in the private walks of life, she dedicated her memory to the state or nation as public property. To hold that, by reason of her constant and avowed interest in philanthropical works, unconnected with public station, the right accrued to an association of individuals, strangers to her blood, to erect a statue of her, typifying a human virtue, through contributions solicited from the general public, is, in my judgment, to assert a proposition at war with the moral sense and I believe it to be in violation of the sacred right of privacy; whose mantle should cover not only the person of the individual, but every personal interest which he possesses and is entitled to regard as private, when through no act of his, nor by any peculiar circumstances, has the public acquired any right in them. Unless equity does interfere, the right of privacy will be lost and that will become the property of the public, which, our sentiments and reason and our sense of justice tell us, is the private property of the relatives of the deceased person. That the plaintiff is entitled, if any one is, to a remedy, has been heretofore mentioned and it is the finding of the trial court, and that that remedy may be preventive in its character seems to me to be within the reason and principle upon which equity proceeds.

It is not necessary that the proposed statue of Mrs. Schuyler should be libelous in character. The wrong consists not in that fact, but in the unauthorized acts of the defendants, which will invite adverse comment and public criticism upon the life and character of the deceased, bring her name and memory into more or less unenviable notoriety and inflict upon her immediate relatives and representatives more or less injury in their feelings and their desires for that privacy, which, in their private station of life, they have the right to enjoy.

The threatened offense is of a permanent and continuing

nature and, in many senses, differs from cases of mere libelous publications. I think that a case was made out where equity was unfettered in its exercise by any legal principle and where the decree of the court below should be affirmed. All concur with Peckham, J., for reversal, except Gray, J., who reads for affirmance.

Judgment reversed.