SECURITY SALES AGENCY v. A. S. ABELL CO.

(District Court, D. Maryland. June 24, 1913.)

**LIBEL AND SLANDER** (§ 73*)—**RIGHT TO SUE**—**LIBEL AGAINST THIRD PERSON.**
   Where plaintiff, having a contract with a trust company for the exclusive sale of bonds issued by the trust company, was pecuniarily injured by defendant's publication of a libel against the trust company, falsely asserting that a receiver of its assets and business had been appointed, but without any claim that defendant had any knowledge of plaintiff or its relations with the trust company, plaintiff could not recover ex delicto for the damages so sustained.
   [Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 174; Dec. Dig. § 73.*]

At Law. Action by the Security Sales Agency, a West Virginia corporation, against the A. S. Abell Company. On demurrer to declaration. Sustained.

T. Rowland Slingluff, of Baltimore, Md., for plaintiff.
Charles McHenry Howard, of Baltimore, Md., for defendant.

ROSE, District Judge. The plaintiff is a West Virginia corporation; the defendant, a corporation of Maryland. The Guarantee Trust & Banking Company is a body corporate of Georgia. For brevity it will be called the Trust Company. Defendant publishes the Baltimore Sun. That paper reported that the Trust Company had gone into receivers' hands and that the hopes of many Baltimoreans for large returns from small investments had been shattered. In point of fact no receivers had been appointed for the Trust Company. The last-named corporation was in the business of issuing large amounts of bonds, many, if not most, of which it sold upon the installment plan. By contract with it the plaintiff was its exclusive agent for the sale of these bonds. For so doing the plaintiff received $300 a month and a commission on each bond sold and on each installment paid. The contract was valuable to the plaintiff. It had built up a large business in the bonds. It had incurred considerable expense in establishing subagencies in many cities. If all the installments should be paid on the bonds it had already sold, its commissions thereon would amount to not less than $30,000. It alleges that as a result of the publication in question the market for the bonds was largely destroyed and that many persons who had already bought them announced that they would not pay any further installments thereon. The publication, it asserts, was falsely, wrongfully, wantonly, and carelessly made. It says it has been damaged to the amount of $50,000.

Defendant demurs to the declaration. It says that no well-considered case can be found where any party, other than the direct subject of slander or libel, has been allowed to maintain an action for such grievance. Poe on Pleading, § 421; Odgers on Libel (5th Ed.) 23. The latter author suggests that there may be an exception when the plaintiff can satisfy the jury that the defendant desired and intended to injure him, and that the best way of doing so was by publishing a libel on B., and the damage to the plaintiff was the natural and necessary consequence of that libel on B.

No decided case is cited in support of this suggestion. Perhaps none is needed. When A., for the direct purpose of injuring B., makes any statement which he knows to be false, it may be immaterial whether he makes it about C., or about any other body or thing. That is, however, not the case made by this narr. It is not even suggested that the defendant had any wish to hurt the plaintiff, or even knew that the plaintiff had any relation, contractual or other, with the Trust Company.

Plaintiff admits that an action for libel cannot, under the circumstances, be maintained. It claims, however, that it is entitled to recover in an action on the case for the special damage which the defendant's careless and, as to the Trust Company, malicious publication did the plaintiff. Its learned and studious counsel admit that they can find no case in which under similar facts a recovery has been had. They rely on the general principle as stated by Odgers, page 77:

"When a defendant either knows or ought to know that special damage will happen to the plaintiff if he writes or speaks certain words, and he writes and speaks those words, desiring and intending that such damage shall follow, or recklessly indifferent whether such damage follows or not, if the words be false, and if such damage does in effect follow directly from their use, an action on the case will lie."

Quite clearly this rule does not cover the present action, unless there is some principle of law which requires every one who writes or speaks about another to know all the contractual relations which that other holds with third persons. If this action can be maintained, any one who loses employment or business as the direct and proximate result of words falsely spoken about some other person, without legal justification or excuse, may maintain the suit, without alleging or proving that the defendant ever knew of the existence of the plaintiff, or had any knowledge whatever that the plaintiff had any relations of any kind with the person of whom the words were spoken. Generally speaking, it may be true, as plaintiff contends, that any one who by his negligent conduct causes injury to another should be held liable for all the natural and proximate consequences of that which he wrongfully did. Yet nevertheless it has never been held that A. might sue B. for damage done to A. by the slanders or libels which B. has published about C. In the last 300 years there must have been in England and America hundreds and thousands of cases in which C. was so connected with A. that a libel or slander published about C. directly and proximately caused injury to A., yet A. has never been allowed to recover for that injury.

It follows that the demurrer must be sustained.