22991, 22992. ATLANTA JOURNAL COMPANY *v.* FARMER.

274

*Arnold, Arnold & Gambrell,* for plaintiff in error.

*George H. Miller,* contra.

Stephens, J. J. W. Farmer and his wife, Mrs. J. W. Farmer, each in a separate and distinct suit against the Atlanta Journal Company, alleged that a publication appearing in a newspaper published by the defendant was libelous to the plaintiff in that it "imputed negro blood" to the plaintiff, who was a white person, by its reference to Thomas Farmer, who was in fact a son of the plaintiff and a white person, as being a negro. The alleged publication reads as follows: "Highway Employees Must Face Trial For Chained Man's Death. Two employees of the State Highway Department must answer to the Whitfield superior court for the death of a negro convict they chained to a telephone pole last summer, the Georgia Court of Appeals ruled Wednesday. J. Fred Killian and M. A. Wells were indicted in Whitfield county on charge of involuntary manslaughter, growing out of the death by sunstroke of Thomas Farmer, a convict working on a public road. It was charged in the indictment that the two chained the negro to a telephone pole after he had fallen to the ground under the heat, the thermometer registered 100 degrees on June 30, 1931, and the negro died of sunstroke about thirty minutes later. Wells filed a demurrer to the indictment, which was overruled by Judge Claude Pittman, of the Whitfield superior court, who ruled that the highway department employees had no legal supervision over convicts. The Court of Appeals upheld that ruling."

This publication nowhere mentions the name of either of the plaintiffs, or that Thomas Farmer, mentioned therein, was in any way related to the plaintiffs. The publication makes no reference to either of the plaintiffs, either directly or indirectly, and no person reading the publication could ascertain from its contents that either of the plaintiffs was referred to, or was intended by the publisher to be referred to. Odgers on Libel and Slander (5th ed., page 23) states that "there must be a definite imputation upon a definite person; and that person must be the plaintiff. A can not,

as a rule, sue for words defamatory only of B, although he may have suffered loss or inconvenience therefrom," and cites a case from India, Subbaiyar *v.* Kristmaiyar, 1 L. R., 1 Madras, 383, in which it was held that a brother can not sue for slander of his sister. The rule is laid down in 37 C. J. 11, that "no action lies by a third person for damages suffered by reason of defamation of another person. The action must be brought by the person against whom the defamatory charge has been made." In the case of Security Sales Agency *v.* A. S. Abell Co., in the United States District Court of Maryland, 205 Fed. 941, it was held that a libelous publication as to the solvency of a business corporation afforded to a person having contracts of a monetary value with the corporation no right of recovery ex delicto for damage resulting in the impairment of the value of his contracts as a result of the libelous publication, where it did not appear that the publisher of the alleged libel had any knowledge of the relationship between the person alleged to have been damaged and the corporation libeled, and it did not appear that the libel was published with the intention of injuring him. Upon the same principle it has been held that a libel on a deceased person does not as such afford a cause of action for damages to his relatives. Wellman *v.* Sun Printing & Publishing Asso., 21 N. Y. S. 577; Sorenson *v.* Balaban, 42 N. Y. S. 653; Eagles *v.* Liberty Weekly Inc., 244 N. Y. S. 430; Newell on Slander and Libel (4th ed.), 368. Cases in which it was held that libelous matter concerning the family of the plaintiff in its collective capacity, or a class or group of people to which the plaintiff belongs, is libelous to the plaintiff, are distinguishable. Had it appeared from the publication, either expressly or by innuendo, and if it could have been so understood by a person reading it, that the alleged libelous charge against the son was aimed at the parent and intended to injure him, the parent possibly would have had a cause of action against the publisher. It is conceivable that a libel upon a person who is the son of a person of prominence, such as the president or a governor, or a person in the public eye and whose conduct is subject to public scrutiny, might, where the relationship of the person libeled is publicly known and the libel of him was calculated to injure his father and was published with the intent and purpose, and was so understood by those reading it, give a cause of action to the father. Neither of the plaintiffs is

brought within the scope of the libelous charge against their son.

The petitions failed to set out causes of action and the court erred' in overruling the general demurrers thereto.

*Judgment in each case reversed. Jenkins, P. J., and Sutton, J., concur.*