[Civ. No. 22585. Second Dist., Div. Three. May 22, 1958.]

MARGARETTE THOMPSON KELLY et al., Appellants, v. JOHNSON PUBLISHING COMPANY, INCORPORATED (a Corporation), Respondent.

Wilson, Carter, Flournoy & Matthews and Rafus J. Carter for Appellants.

Loeb & Loeb, Allen E. Susman and Sanford M. Ehrmann for Respondent.

VALLÉE, J.—Appeal by plaintiffs from a judgment entered on an order sustaining defendant's general demurrer to the complaint without leave to amend. The question is: Does the complaint state facts sufficient to constitute a cause of action for wrongful invasion of the right of privacy or for libel?

The complaint alleges:

1. Defendant is the owner and publisher of "Ebony," a magazine circulated in the county of Los Angeles and throughout the world.

2. Plaintiffs are the surviving sisters and only heirs at law of Cecil Lewis Thompson who died in Los Angeles on April 11, 1946.

3. At the time of his death and for many years prior thereto Thompson had received and enjoyed international recognition and acclaim as a fighter and boxer in the prize

ring, and had attained a status as a boxing champion under the name ''Jack Thompson.''

4. Thompson was of good reputation and character, and had and enjoyed a good general reputation among the members of the community in which he lived and performed.

5. Thompson was the sole brother of plaintiffs and his memory is held by plaintiffs with deep reverence and respect.

6. On October 1, 1956, in Los Angeles city and county defendant, for the purpose of exploiting its publishing business and of increasing its gains, did invade plaintiffs' ''right of privacy by wilfully and maliciously publishing and using in said magazine the following libelous matter in the following manner of and concerning the said CECIL LEWIS THOMPSON, also known as JACK THOMPSON, in large type and in capital letters:

'' 'No Champ Has Been Able to Retire on Ring Earnings,' and then in smaller letters;

'' 'Of the 31 Negroes who held world boxing championships, five are still very much on the scene as title holders, six others are still boxing although over the hill, eight are dead and· 12 have hung up their gloves for good. While many won fame, none quit the ring with enough money to live on. Young Jack Thompson, the handsome, slashing boxing master master [sic] who roared out of his native Los Angeles in 1931 to capture the welterweight title from Jackie Fields, wound up a dope-sodden derelict on the shadowy San Francisco waterfront where one morning his knife-scarred body was fished from the Bay.' ''

7. All of said statements were false and published without any foundation whatever, and ''the same was done without consent of the plaintiffs.''

8. The ''publication was done falsely, maliciously, wrongfully and unlawfully, and unprivileged and without occasion or excuse and has caused plaintiffs great mental pain and anguish, humiliation and mortification, and has caused an evil opinion of their deceased brother, JACK THOMPSON, in the minds of his former associates and the public generally; that in truth and in fact at the time the said JACK THOMPSON retired from his vocation as a boxer, he did have sufficient 'money to live on'; that in truth and in fact he did not wind up a 'dope-sodden derelict on the San Francisco waterfront' nor was his 'knife-scarred body fished from the Bay.' ''

9. By the publication of the article defendant intended to convey the meaning, and it was understood by the persons

reading it to mean, that Thompson was a person outside of respectable society; that he was a "human wreck"; and that he met his death through the excessive use of opiates, and that he was a dope addict. The publication was wholly false and defamatory.

10. By reason of the premises, plaintiffs have been "generally" damaged in a specified amount.

Plaintiffs first contend the complaint states facts sufficient to constitute a cause of action for wrongful invasion of the right of privacy.

The right of privacy is a purely personal one. (Prosser on Torts, 2d ed., 641, § 97; *Mau* v. *Rio Grande Oil, Inc.*, 28 F.Supp. 845, 846.) "A right of action for violation of one's right of privacy being purely a personal one, appellant must allege and prove an invasion of his own right of privacy before he can recover." (*Metter* v. *Los Angeles Examiner*, 35 Cal. App.2d 304, 310 [95 P.2d 491].)

The gist of the cause of action in a privacy case is not injury to the character or reputation but a direct wrong of a personal character resulting in injury to the feelings without regard to any effect which the publication may have on the property, business, pecuniary interest, or the standing of the individual in the community. (*Reed* v. *Real Detective Pub. Co.*, 63 Ariz. 294 [162 P.2d 133, 138]; *Continental Optical Co.* v. *Reed*, 119 Ind.App. 643 [86 N.E.2d 306, 88 N.E.2d 55, 14 A.L.R.2d 743, 747].) The right of privacy concerns one's own peace of mind, while the right of freedom from defamation concerns primarily one's reputation. (*Reed* v. *Real Detective Pub. Co.*, 63 Ariz. 294 [162 P.2d 133, 139]; Pound, Interests of Personality, 28 Harv.L.Rev. 343, 362-363.)

The injury is mental and subjective. It impairs the mental peace and comfort of the person. (Pound in 28 Harv. L.Rev. 343, 363; *Fairfield* v. *American Photocopy etc. Co.*, 138 Cal.App.2d 82, 86 [291 P.2d 194]; anno: 14 A.L.R.2d 750.)

Dean Prosser says: "The right [of privacy] is a personal one, and it does not extend to the plaintiff's dog. The action cannot be maintained by a relative of the person concerned, unless that relative is himself brought into unjustifiable publicity. The cause of action does not survive the individual, and cannot exist after death." (Prosser on Torts, 2d ed., 641, § 97.)

*Coverstone* v. *Davies*, 38 Cal.2d 315 [239 P.2d 876], was in part an action by the parents of William L. Mock for the

alleged violation of their right of privacy. William had been arrested, tried, and acquitted of a public offense. The claimed violation of his parents' right of privacy was predicated on the publicity attendant on William's arrest and trial. The court stated (p. 322):

"While the right of action for the invasion of one's privacy is recognized in California [citations], it is clear that the principles which govern the right to recover on such theory do not encompass the facts asserted herein. [Citation.] The gravamen of the tort is ordinarily the unwarranted publication by defendant of intimate details of plaintiff's private life. . . .

"[P. 323.] So far as the briefs and independent research have revealed, there have been no instances wherein courts have allowed recovery on this theory, where defendant's alleged wrongful act was directed toward a third person, and only as an incident to that act was it claimed that plaintiff's privacy had been invaded. Neither reason nor authority indicates that there should be an extension of liability to cover such a situation. Such a rule would open the courts to persons whose only relation to the asserted wrong is that they are related to the victim of the wrongdoer and were therefore brought unwillingly into the limelight. Every defamation, false imprisonment, and malicious prosecution would then be an actionable invasion of the privacy of the relatives of the victim." (Also see *Wright* v. *R.K.O. Radio Pictures,* 55 F.Supp. 639, 640-641; *Schumann* v. *Loew's Incorporated,* 135 N.Y.S.2d 361, 365-368.)

The authorities appear to be uniform that the right of privacy cannot be asserted by anyone other than him whose privacy is invaded. ■ The publication did not invade plaintiffs' privacy in any respect. There was nothing in it which brought plaintiffs into unjustifiable or any publicity.

What is said in *Kelley* v. *Post Publishing Co.,* 327 Mass. 275 [98 N.E.2d 286], is appropriate (p. 287):

"The law does not provide a remedy for every annoyance that occurs in everyday life. Many things which are distressing or may be lacking in propriety or good taste are not actionable. Moreover, if the parents had a cause of action in a case like the present there would seem to be no reason why other members of the immediate family, the brothers and sisters, whose sensibilities may also have been wounded should not also be permitted to sue. The only reference to the plaintiffs was that the girl whose body appeared in the photograph was

their daughter. This can hardly be said to interfere with their privacy.''

We find nothing in *Smith* v. *Doss*, 251 Ala. 250 [37 So.2d 118], or in *Schuyler* v. *Curtis*, 147 N.Y. 434 [42 N.E. 22], contrary to the views we have expressed. Plaintiffs get more out of those cases than the courts put in. *Bazemore* v. *Savannah Hospital*, 171 Ga. 257 [155 S.E. 194], and *Douglas* v. *Stokes*, 149 Ky. 506 [149 S.W. 849], also relied on by plaintiffs, are not analogous. They were distinguished in *Metter* v. *Los Angeles Examiner*, *supra*, 35 Cal.App.2d 304, 310: Bazemore, on the ground there was a violation of a confidential relation in the publication of a photograph; Douglas, on the ground there was a breach of contract also in the publication of a photograph. They were also distinguished in *Schumann* v. *Loew's Incorporated*, 135 N.Y.S.2d 361, 366-367.

Plaintiffs also argue the complaint states facts sufficient to constitute a cause of action for libel.

''Libel is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation.'' (Civ. Code, § 45.) ■ Defamation of a deceased person does not give rise to a civil right of action at common law in favor of the surviving spouse, family, or relatives, who are not themselves defamed. A libel on the memory of a deceased person is not deemed to inflict on the surviving relatives of the deceased any such legal damage as will sustain a civil action for the defamation. (*Skrocki* v. *Stahl*, 14 Cal.App. 1 [110 P. 957] ; *Saucer* v. *Giroux*, 54 Cal.App. 732 [202 P. 887].)[1] ■ The defamatory matter must be published concerning the plaintiff.

[1] Also see *Hughes* v. *New England Newspaper Pub. Co.*, 312 Mass. 178 [43 N.E.2d 657, 658-659]; *Bradt* v. *New Nonpareil Co.*, 108 Iowa 449 [79 N.W. 122]; *Fleagle* v. *Downing*, 183 Iowa 1300 [168 N.W. 157]; *Houston* v. *Interstate Circuit* (Tex. Civ. App.), 132 S.W.2d 903, 906; *Renfro Drug Co.* v. *Lawson* (Tex. Civ. App.), 144 S.W.2d 417; *Rose* v. *Daily Mirror, Inc.*, 284 N.Y. 335 [31 N.E.2d 182, 132 A.L.R. 888]; *Wellman* v. *Sun Printing & Pub. Assn.*, 66 Hun 331 [21 N.Y.S. 577]; *Sorenson* v. *Balaban*, 11 App.Div. 164 [42 N.Y.S. 654]; *Eagles* v. *Liberty Weekly*, 137 Misc. 575 [244 N.Y.S. 430]; *Clere* v. *E. W. Edwards & Son*, 166 Misc. 26 [1 N.Y.S.2d 244, 246]; *Marinelli* v. *News Syndicate Co.*, 83 N.Y.S.2d 857; *Hurst* v. *Goodwin*, 114 Ga. 585 [40 S.E. 764]; *Atlanta Journal Co.* v. *Farmer*, 48 Ga.App. 273 [172 S.E. 647]; *Benton* v. *Knoxville News-Sentinel Co.*, 174 Tenn. 658, 661 [130 S.W.2d 105]; Rest., Torts, § 560; 53 C.J.S. 53, § 11, 229, § 145; 33 Am.Jur. 42, § 7; 30 Cal. Jur.2d 684, § 41, 686, § 44; anno: 132 A.L.R. 891, 146 A.L.R. 739; 10 Cal.L.Rev. 362-363.

(Code Civ. Proc., § 460; 30 Cal.Jur.2d 699, § 62.) *Skrocki* v. *Stahl, supra,* 14 Cal.App. 1, was an action for libel. The newspaper article complained of stated in part that a brother of the plaintiff had committed suicide, leaving a letter setting forth the race track and slot machines as the reasons for ending his life, and that the deceased was an anarchist. The court stated (p. 5):

"As a matter of sound public policy, the malicious defamation of the memory of the dead is condemned as an affront to the general sentiments of morality and decency, and the interests of society demand its punishment through the criminal courts, but the law does not contemplate the offense as causing any special damage to another individual, though related to the deceased, and, therefore, it cannot be made the basis for recovery in a civil action. This, probably, is a necessary incident to the theory of the social relations entertained here, where one is supposed to stand or fall upon his own merits and where success or failure is entirely independent of the accidents of rank or family connection. It necessarily follows that theoretically at least, no man's success can be aided or retarded by the character of his relative. The defamation of such character, therefore, however grievous or disturbing, can afford no injury that can be measured by a pecuniary standard."

The facts in *Saucer* v. *Giroux, supra,* 54 Cal.App. 732, are stated in the opinion (p. 733): "The action is based upon the alleged act of defendant in causing to be published in a newspaper false and libelous statements that the deceased adult brother of plaintiff Virginia Saucer was an illegitimate son of her deceased mother, which false statements, it is alleged, have caused plaintiff grievous mental and physical suffering, for which she asked judgment for five hundred thousand dollars." The court held (p. 733):

"While the publication of malicious defamatory statements 'tending to blacken the memory of one who is dead' is made a crime (Pen. Code, § 248), punishable as provided in section 249 of the Penal Code, it gives rise to no cause of action in favor of a relative of such deceased for the recovery of damages. While section 460 of the Code of Civil Procedure provides that in an action for libel it is not necessary to state in the complaint any extrinsic facts for the purpose of showing application to the plaintiff of the defamatory matter out of which the cause of action arose, it must contain an allegation to the effect that the libelous statements

were published *concerning the plaintiff*. Not only is there an absence from the complaint of such allegation so required by this section, but it is manifest that such fact could not be alleged. The charge concerning the deceased mother and brother of Virginia Saucer could have no reference to the latter. There was nothing in the article published which tended in any manner to reflect on the plaintiffs, or either of them, and the alleged grievous mental sufferings of Virginia Saucer were of the same kind as that produced by the publication upon any of the other relatives of the deceased. Hence, if a cause of action exists in her favor, then manifestly any relative, or even friend, of the deceased who had likewise suffered might maintain a cause of action for damages." (To the same effect, *Bradt* v. *New Nonpareil Co.*, 108 Iowa 449 [79 N.W. 122].) Other courts give as a reason for the rule that the right of action is not based on the injury to one's feelings but is intended to redress the attack on his reputation with others. (*Sorenson* v. *Balaban*, 11 App.Div. 164 [42 N.Y.S. 654, 656].)

Dean Prosser says: "Any living person may be defamed. The civil action is personal to the plaintiff, and cannot be founded on the defamation of another. . . . Likewise, no civil action will lie for the defamation of one who is dead, unless there is a reflection upon those still living, who are themselves defamed. Statutes in several states have made defamation of the dead a crime, but they are construed to create no civil action." (Prosser on Torts, 2d ed., 578, § 92.) The Restatement says: "One who falsely, and without a privilege to do so, publishes defamatory matter of a deceased person is not liable either to the estate of such person or to his descendants or relatives." (3 Rest., Torts, 143, § 560.)

The article did not make reference to plaintiffs in any way; it was not of or concerning plaintiffs. The specific allegation is that the publication was "of and concerning the said Cecil Lewis Thompson." The false statement that Thompson "wound up a dope-sodden derelict on the shadowy San Francisco waterfront where one morning his knife-scarred body was fished from the Bay" did not constitute a libel on his sisters. The publication did not expressly or impliedly cast any personal reflection on them. The fact that the article was false as to Thompson does not operate to give plaintiffs a right of action. (*Hughes* v. *New England Newspaper Pub. Co.*, 312 Mass. 178 [43 N.E.2d 657, 658].) Plaintiffs were not charged with any misconduct

or wrongdoing, or with any connection with Thompson's habits, status, or death. The article was not directed against plaintiffs and did not tend to expose them to hatred, contempt, ridicule, or obloquy.

We hold the complaint does not state facts sufficient to constitute a cause of action for either a wrongful invasion of the right of privacy or for libel. The demurrer to the complaint was correctly sustained without leave to amend.

Affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.