WEBB (PLUMMER v.). See Cases Nos. 11,-233 and 11,234.

## Case No. 17,322.

### WEBB v. PORTLAND MANUF'G CO.

[3 Sumn. 189; [1] 3 Law Rep. 374.]

Circuit Court, D. Maine. May Term, 1838.

LEGAL AND EQUITABLE REMEDIES—DIVERSION OF WATER COURSE—INJUNCTION—RIPARIAN RIGHTS—MILL OWNERS.

1. Actual perceptible damage is not indispensable as the foundation of an action. It is sufficient to shew a violation of a right. The law will presume some damage in such a case. A fortiori, where the act done is such, that, by its repetition or continuance, it may become the foundation or evidence of an adverse right.

[Cited in Whipple v. Cumberland Manuf'g Co., Case No. 17,516.]

[Cited in Lund v. City of New Bedford, 121 Mass. 290; Ross v. Thompson, 78 Ind. 97; Quigley v. McKee, 12 Or. 25, 5 Pac. 347; Plumleigh v. Dawson, 1 Gilman, 552.]

2. A party may recover at law nominal damages for a diversion of a water-course, where no actual damage has occurred, as a means of establishing and protecting his right. A fortiori, he may assert his right in equity, by a writ of injunction.

[Cited in Kyle v. Board of Com'rs of Kosciusko Co., 94 Ind. 119; Inhabitants of Brookline v. Mackintosh, 133 Mass. 224; Gilbert v. Showerman, 23 Mich. 453; Scheetz's Appeal, 35 Pa. St. 95; Lyon v. McLaughlin, 32 Vt. 426; Rigney v. Tacoma Light & Water Co. (Wash.) 38 Pac. 149. Cited in brief in Hewett v. W. U. Tel. Co., 4 Mackey, 426. Cited in Hargro v. Hodgdon, 89 Cal. 628, 26 Pac. 1107; Faust v. City of Huntington, 91 Ind. 496. Cited in brief in Morse v. Machias W. P. & M. Co., 42 Me. 120. 122. Cited in Sproat v. Durland (Okl.) 35 Pac. 689; New York Rubber Co. v. Rothery, 132 N. Y. 296, 30 N. E. 842; Carpenter v. Gold. 13 Haus. (88 Va.) 553, 14 S. E. 330; City of Moundsville v. Ohio River R. Co., 37 W. Va. 103, 16 S. E. 514; Lawson v. Mowry, 9 N. W. 282, 52 Wis. 236; Lawson v. Menasha W. W. Co., 59 Wis. 398, 18 N. W. 440; Kimberly & Clark Co. v. Hewitt. 75 Wis. 376, 44 N. W. 304; Barton v. Union Cattle Co., 28 Neb. 357, 44 N. W. 456. Cited in brief in Fairhaven Marble & S. Co. v. Adams, 46 Vt. 501.]

3. No riparian proprietor or mill-owner has a right to divert or unreasonably retard the natural flow of water to the parties below; and no proprietor or mill-owner below has a right to retard or throw it back upon the lands or mills

[1] [Reported by Charles Sumner, Esq.]

above, to the prejudice of the right of the proprietors thereof.

[Cited in Pratt v. Lamson, 2 Allen, 285.]

4. Where there is a mere fugitive and temporary diversion of water, without damage, and without pretence of right, a court of equity will not interfere, by way of injunction. Quære, whether there would be any redress at law.

[Cited in Elliot v. Fitchburg R. Co.. 10 Cush. 196; Howe Scale Co. v. Terry, 47 Vt. 120; Moore v. Clear Lake Waterworks (Cal.) 8 Pac. 818. Cited in brief in Davis v. Winslow, 51 Me. 291.]

5. The plaintiffs and defendants were owners of different mills, in severalty. on the same milldam. The defendants opened a canal into the pond, at some distance above the dam, for a supply of water to work one of their mills, the water thus withdrawn being returned into the river immediately below the dam. *Held*, that both parties were entitled, per my et per tout, to their proportions of the whole stream, on its arrival at the dam. and that neither party could divert any portion of it, though the portion diverted were a less quantity than he would naturally use at his mill on the dam. It will be no answer to such a violation of right by one party, that the other has not inclosed the quantity of water in the stream by means of a reservoir higher up.

[Cited in Pratt v. Lamson. 2 Allen, 288; Plumleigh v. Dawson. 1 Gilman, 551; Druley v. Adam, 102 Ill. 195; Moulton v. Newburyport Water Co.. 137 Mass. 166. Cited in brief in Jordan v. Mayo. 41 Me. 554. Cited in Watson v. Peters. 26 Mich. 515; Pinney v. Luce, 44 Minn. 370, 46 N. W. 563.]

Bill in equity for an injunction by the plaintiff to prevent the defendant from diverting a watercourse from the plaintiff's mill, and for further relief.

The facts admitted on all sides were, that at the Saccarappi Falls, on the river Presumpscut, there were two successive falls, upon which there are erected certain mills and milldams, the latter being called the upper and the lower milldams, and the distance between them is about forty or fifty rods; and the water therein constituted the mill-pond of the lower dam. The plaintiff is the owner of certain mills and mill privileges, in severalty, upon the lower dam, and the defendants are entitled to certain other mills and mill privileges on the same dam, also in severalty. As to a portion of one of the mills, there was a controversy between the parties in regard to title; but that controversy in no essential degree affected the question presented to the court. The defendants are the owners of a cotton-factory mill near the left bank of the river, and opened a canal for the supply of the water necessary to work that mill, into the pond immediately below the upper dam; and the water thus withdrawn was returned again into the river immediately below the lower dam. The defendants insisted upon their right so to divert and withdraw the water, by means of their canal. upon the ground, that it was a small part only, (about one fourth) of the water. to which, as mill owners on the lower dam, they were entitled; and that there was no damage whatsoever

done to the plaintiff's mill by this diversion of the water.

Upon the coming in of the answer a preliminary question was suggested by the court at the hearing.

C. S. Daveis, for plaintiff.

P. Mellen and Mr. Longfellow, for defendants.

Before STORY, Circuit Justice, and WARE, District Judge.

STORY, Circuit Justice. The question, which has been argued upon the suggestion of the court, is of vital importance in the cause; and, if decided in favor of the plaintiff, it supersedes many of the inquiries, to which our attention must otherwise be directed. It is on this account, that we thought it proper to be argued, separately from the general merits of the cause. The argument for the defendants then presents two distinct questions. The first is, whether, to maintain the present suit, it is essential for the plaintiff to establish any actual damage. The second is, whether, in point of law, a mill owner, having a right to a certain portion of the water of a stream for the use of his mill at a particular dam, has a right to draw off the same portion, or any less quantity of the water, at a considerable distance above the dam, without the consent of the owners of other mills on the same dam. In connection with these questions the point will also incidentally arise, whether it makes any difference, that such drawing off of the water above, can be shewn to be no sensible injury to the other mill owners on the lower dam.

As to the first question, I can very well understand that no action lies in a case where there is damnum absque injuria, that is, where there is a damage done without any wrong or violation of any right of the plaintiff. But I am not able to understand, how it can correctly be said, in a legal sense, that an action will not lie, even in case of a wrong or violation of a right, unless it is followed by some perceptible damage, which can be established, as a matter of fact; in other words. that injuria sine damno is not actionable. See Mayor of Lynn v. Mayor of London, 4 Term R. 130, 141, 143, 144; Com. Dig. "Action on the Case," B, 1, 2. On the contrary, from my earliest reading, I have considered it laid up among the very elements of the common law, that, wherever there is a wrong, there is a remedy to redress it; and that every injury imports damage in the nature of it; and, if no other damage is established, the party injured is entitled to a verdict for nominal damages. A fortiori, this doctrine applies where there is not only a violation of a right of the plaintiff, but the act of the defendant. if continued, may become the foundation, by lapse of time. of an adverse right in the defendant; for then it

.assumes the character, not merely of a violation of a right, tending to diminish its value, but it goes to the absolute destruction and extinguishment of it. Under such circumstances, unless the party injured can protect his right from such a violation by an action, it is plain, that it may be lost or destroyed, without any possible remedial redress. In my judgment, the common law countenances no such inconsistency, not to call it by a stronger name. Actual, perceptible damage is not indispensable as the foundation of an action. The law tolerates no farther inquiry than whether there has been the violation of a right. If so, the party injured is entitled to maintain his action for nominal damages, in vindication of his right, if no other damages are fit and proper to remunerate him.

So long ago as the great case of Ashby v. White, 2 Ld. Raym. 938, 6 Mod. 45, Holt, 524, the objection was put forth by some of the judges, and was answered by Lord Holt, with his usual ability and clear learning; and his judgment was supported by the house of lords, and that of his brethren overturned. By the favor of an eminent judge, Lord Holt's opinion, apparently copied from his own manuscript, has been recently printed.[2] In this last printed opinion, (page 14), Lord Holt says: "It is impossible to imagine any such thing, as injuria sine damno. Every injury imports damage in the nature of it." S. P. 2 Ld. Raym. 955. And he cites many cases in support of his position. Among these is Starling v. Turner, 2 Lev. 50, 2 Vent. 25, where the plaintiff was a candidate for the office of bridge-master of London bridge, and the lord mayor refused his demand of a poll; and it was determined, that the action was maintainable for the refusal of the poll. Although it might have been, that the plaintiff would not have been elected, the action was nevertheless maintainable: for the refusal was a violation of the plaintiff's right to be a candidate. So in the case cited, as from "23 Edw. III. 18, tit. 'Defence,'" (it is a mistake in the MS., and should be 29 Edw. III. 18b; Fitz. Abr. tit. "Defence," pl. 5), and 11 Hen. IV. 47, where the owner of a market, entitled to toll upon all cattle sold within the market, brought an action against the defendant, for hindering a person from going to the market with the intent to sell a horse, it was, on the like ground, held maintainable; for though the horse might not have been sold, and no toll would have become due; yet the hindering the plaintiff from the possibility of having toll was such an injury as did import such damage, for which the plaintiff ought to recover. So in Hunt v. Dowman, Cro. Jac. 478, 2 Rolle, 21, where the lessor brought an action

against the lessee, for disturbing him from entering into the house leased, in order to view it, and to see whether any waste was committed; and it was held, that the action well lay, though no waste was committed and no actual damage done; for the lessor had a right so to enter, and the hindering of him was an injury to that right, for which he might maintain an action. So Herring v. Finch, 2 Lev. 250, where it was held, that a person entitled to vote, who was refused his vote at an election, might well maintain an action therefor, although the candidate for whom he might have voted might not have been chosen: and the voter could not sustain any perceptible or actual damage by such refusal of his vote. The law gives the remedy in such case; for there is a clear violation of the right. And this doctrine, as to a violation of the right to vote, is now incontrovertibly established; and yet it would be impracticable to show any temporal or actual damage thereby. See Harman v. Tappenden, 1 East. 555; Drewe v. Coulton, Id. 563, note; Kilham v. Ward, 2 Mass. 236; Lincoln v. Hapgood, 11 Mass. 350; 2 Vin. Abr. "Actions," [Case] (N. c.) pl. 3. In the same case, of Ashby v. White, as reported by Lord Raymond, 2 Ld. Raym. 953, Lord Holt said: "If the plaintiff has a right, he must of necessity have a means to vindicate and maintain it, and a remedy, if he is injured in the exercise or enjoyment of it; and, indeed, it is a vain thing to imagine a right without a remedy; for want of right and want of remedy are reciprocal." S. P. 6 Mod. 53. The principles laid down by Lord Holt are so strongly commended, not only by authority, but by the common sense and common justice of mankind, that they seem absolutely, in a juridical view, incontrovertible. And they have been fully recognised in many other cases. The note of Mr. Sergeant Williams to Mellor v. Spateman, 1 Saund. 346a, note 2, Wells v. Watling, 2 W. Bl. 1239, and the case of the Tunbridge Dippers, Weller v. Baker, 2 Wils. 414, are direct to the purpose. I am aware, that some of the old cases inculcate a different doctrine, and perhaps are not reconcilable with that of Lord Holt. There are also some modern cases, which at first view seem to be the contrary. But they are distinguishable from that now in judgment; and, if they were not, "Ego assentior Scævolæ." The case of Williams v. Morland, 2 Barn. & C. 910, seems to have proceeded upon the ground, that there was neither any damage nor any injury to the right of the plaintiff. Whether that case can be supported upon principle, it is not now necessary to say. Some of the dicta in it have been subsequently impugned; and the general reasoning of the judges seems to admit, that if any right of the plaintiff had been violated, the action would have lain. The case of Jackson v. Pesked, 1 Maule & S. 235, turned upon the supposed defects of the declaration, as applicable to a mere reversionary interest, it not stating any act done to the prejudice of that reversionary interest. I do not stop to in-

---

[2] See "The Judgments Delivered by the Lord Chief Justice Holt, in the case of Ashby v. White, and in the Case of Paty [Holt, 526], printed from the original MS." London: Saunders & Benning, 1837. It is understood, that the publication is under the direction of Lord Chief Justice Denman. See particularly, p. 14, 15, 27, 30, of these opinions.

quire, whether there was not an over-nicety in the application of the technical principles of pleading to that case; although, notwithstanding the elaborate opinion of Lord Ellenborough, one might be inclined to pause upon it. The case of Young v. Spencer, 10 Barn. & C. 145, turned also upon the point, whether any injury was done to a reversionary interest. I confess myself better pleased with the ruling of the learned judge (Mr. Justice Bayley), at the trial, than with the decision of the court in granting a new trial. But the court admitted, that, if there was any injury to the reversionary right, the action would lie; and although there might be no actual damage proved, yet if any thing done by the tenant would destroy the evidence of title, the action was maintainable. A fortiori, the action must have been held maintainable, if the act done went to destroy the existing right, or to found an adverse right.

On the other hand, Marzetti v. Williams, 1 Barn. & Adol. 415, goes the whole length of Lord Holt's doctrine; for there the plaintiff recovered, notwithstanding no actual damage was proved at the trial; and Mr. Justice Taunton on that occasion cited many authorities to show, that, where a wrong is done, by which the right of the party may be injured, it is a good cause of action, although no actual damage be sustained. In Hobson v. Todd, 4 Term R. 71, 73, the court decided the case upon the very distinction which is most material to the present case, that if a commoner might not maintain an action for an injury, however small, to his right, a mere wrong-doer might, by repeated torts, in the course of time establish evidence of a right of common. The same principle was afterwards recognized by Mr. Justice Grose, in Pindar v. Wadsworth, 2 East, 162. But the case of Bower v. Hill, 1 Bing. N. C. 549, fully sustains the doctrine for which I contend; and, indeed, a stronger case of its application cannot well be imagined. There the court held, that a permanent obstruction to a navigable drain of the plaintiff's, though choked up with mud for sixteen years, was actionable, although the plaintiff received no immediate damage thereby; for, if acquiesced in for twenty years, it would become evidence of a renunciation and abandonment of the right of way. The case of Blanchard v. Baker, 8 Greenl. 253, 268, recognizes the same doctrine in the most full and satisfactory manner, and is directly in point; for it was a case for diverting water from the plaintiff's mill. I should be sorry to have it supposed, for a moment, that Tyler v. Wilkinson [Case No. 14,312], imported a different doctrine. On the contrary, I have always considered it as proceeding upon the same doctrine.

Upon the whole, without going farther into an examination of the authorities on this subject, my judgment is, that, whenever there is a clear violation of a right, it is not necessary in an action of this sort to show actual damage; that every violation imports damage; and if no other be proved, the plaintiff is entitled to a verdict for nominal damages. And, a fortiori, that this doctrine applies, whenever the act done is of such a nature, as that by its repetition or continuance it may become the foundation or evidence of an adverse right. See, also, Mason v. Hill, 3 Barn. & Adol. 304, 5 Barn. & Adol. 1.

But if the doctrine were otherwise, and no action were maintainable at law, without proof of actual damage; that would furnish no ground, why a court of equity should not interfere, and protect such a right from violation and invasion; for, in a great variety of cases, the very ground of the interposition of a court of equity is, that the injury done is irremediable at law; and that the right can only be permanently preserved or perpetuated by the powers of a court of equity. And one of the most ordinary processes, to accomplish this end is by a writ of injunction, the nature and efficacy of which for such purpose, I need not state, as the elementary treatises fully expound them. See Eden, Inj.; 2 Story, Eq. Jur. c. 23, §§ 86–959; Bolivar Manuf'g Co. v. Neponset Manuf'g Co., 16 Pick. 241. If, then, the diversion of water complained of in the present case is a violation of the right of the plaintiffs, and may permanently injure that right, and become, by lapse of time, the foundation of an adverse right in the defendant, I know of no more fit case for the interposition of a court of equity, by way of injunction, to restrain the defendants from such an injurious act. If there be a remedy for the plaintiffs at law for damages, still that remedy is inadequate to prevent and redress the mischief. If there be no such remedy at law, then, a fortiori, a court of equity ought to give its aid to vindicate and perpetuate the right of the plaintiffs. A court of equity will not indeed entertain a bill for an injunction in case of a mere trespass fully remediable at law. But if it might occasion irreparable mischief, or permanent injury, or destroy a right, that is the appropriate case for such a bill. See 2 Story, Eq. Jur. § 926–928, and the cases there cited: Jerome v. Ross, 7 Johns. Ch. 315; Van Bergen v. Van Bergen, 3 Johns. Ch. 282; Newburgh & C. Turnpike Co. v. Miller, 5 Johns. Ch. 101; Gardner v. Village of Newburgh, 2 Johns. Ch. 162.

Let us come, then, to the only remaining question in the cause; and that is, whether any right of the plaintiff, as mill-owner on the lower dam, is or will be violated by the diversion of the water by the canal of the defendants. And here it does not seem to me that, upon the present state of the law, there is any real ground for controversy, although there were formerly many vexed questions, and much contrariety of opinion. The true doctrine is laid down in Wright v. Howard, 1 Sim. & S. 190, by Sir John Leach, in regard to riparian proprietors, and his opinion has since been deliberately adopted by the king's bench. Mason v. Hill, 3 Barn.

& Adol. 304, 5 Barn. & Adol. 1. See, also, Bealey v. Shaw, 6 East, 208. "Prima facie, (says that learned judge,) the proprietor of each bank of a stream is the proprietor of half the land covered by the stream; but there is no property in the water. Every proprietor has an equal right to use the water, which flows in the stream; and, consequently, no proprietor can have the right to use the water to the prejudice of any other proprietor, without the consent of the other proprietors, who may be affected by his operations; no proprietor can either diminish the quantity of water, which would otherwise descend to the proprietors below, nor throw the water back upon the proprietors above. Every proprietor, who claims a right either to throw the water back above, or to diminish the quantity of water, which is to descend below, must, in order to maintain his claim, either prove an actual grant or license from the proprietors affected by his operations, or must prove an uninterrupted enjoyment of twenty years, which term of twenty years is now adopted upon a principle of general convenience, as affording conclusive presumption of a grant." The same doctrine was fully recognised and acted upon in the case of Tyler v. Wilkinson [Case No. 14,312], and also in the case of Blanchard v. Baker, 8 Greenl. 253, 266. In the latter case the learned judge, (Mr. Justice Weston), who delivered the opinion of the court, used the following emphatic language: "The right to the use of a stream is incident or appurtenant to the land through which it passes. It is an ancient and well-established principle, that it cannot be lawfully diverted, unless it is returned again to its accustomed channel, before it passes the land of a proprietor below. Running water is not susceptible of an appropriation, which will justify the diversion or unreasonable detention of it. The proprietor of the watercourse has a right to avail himself of its momentum as a power, which may be turned to beneficial purposes." [3] Mr. Chancellor Kent has also summed up the same doctrine, with his usual accuracy, in the brief, but pregnant, text of his Commentaries, (3 Kent's Comm., 3d Ed., lect. 42, p. 439); and I scarcely know, where else it can be found reduced to so elegant and satisfactory a formulary. In the old books, the doctrine is quaintly, though clearly stated; for it is said, that a water-course begins ex jure naturæ, and having taken a certain course naturally, it cannot be (lawfully) diverted. "Aqua currit, et debet currere, ut currere solebat." Shury v. Piggot, 3 Bulst. 339, Poph. 166.

The same principle applies to the owners of mills on a stream. They have an undoubted

right to the flow of the water, as it has been accustomed of right and naturally to flow to their respective mills. The proprietor above has no right to divert, or unreasonably to retard, this natural flow to the mills below; and no proprietor below has a right to retard or turn it back upon the mills above, to the prejudice of the right of the proprietors thereof. This is clearly established by the authorities already cited; the only distinction between them being, that the right of a riparian proprietor arises by mere operation of law, as an incident to his ownership of the bank; and that of a mill-owner, as an incident to his mill. Bealey v. Shaw, 6 East, 208; Saunders v. Newman, 1 Barn. & Ald. 258; Mason v. Hill, 3 Barn. & Adol. 304, 5 Barn. & Adol. 1; Blanchard v. Baker, 8 Greenl. 253, 268; and Tyler v. Wilkinson [supra], are fully in point. Mr. Chancellor Kent, in his Commentaries, relies on the same principles, and fully supports them by a large survey of the authorities. 3 Kent, Comm. (3d Ed.) lect. 52, pp. 441–445.

Now, if this be the law on this subject, upon what ground can the defendants insist upon a diversion of the natural stream from the plaintiff's mills, as it has been of right accustomed to flow thereto? First, it is said, that there is no perceptible damage done to the plaintiffs. That suggestion has been already in part answered. If it were true, it could not authorize a diversion, because it impairs the right of the plaintiffs to the full, natural flow of the stream: and may become the foundation of an adverse right in the defendants. In such a case, actual damage is not necessary to be established in proof. The law presumes it. The act imports damage to the right, if damage be necessary. Such a case is wholly distinguishable from a mere fugitive, temporary trespass, by diverting or withdrawing the water a short period, without damage, and without any pretence of right. In such a case the wrong, if there be no sensible damage and it be transient in its nature and character, as it does not touch the right, may possibly (for I give no opinion upon such a case), be without redress at law; and certainly it would found no ground for the interposition of a court of equity by way of injunction.

But I confess myself wholly unable to comprehend, how it can be assumed in a case, like the present, that there is not and cannot be an actual damage to the right of the plaintiff. What is that right? It is the right of having the water flow in its natural current at all times of the year to the plaintiff's mills. Now, the value of the mill privileges must essentially depend, not merely upon the velocity of the stream, but upon the head of water, which is permanently maintained. The necessary result of lowering the head of water permanently, would seem, therefore, to be a direct diminution of the value of the privileges. And if so, to that extent it must be an actual damage.

Again, it is said, that the defendants are

---

[3] The case of Mason v. Hill, 5 Barn. & Adol. 1, contains language of an exactly similar import, used by Lord Denman, in delivering the opinion of the court. See, also, Gardner v. Village of Newburgh, 2 Johns. Ch. 162.

mill-owners on the lower dam, and are entitled, as such, to their proportion of the water of the stream in its natural flow. Certainly they are. But where are they so entitled to take and use it? At the lower dam; for there is the place, where their right attaches, and not at any place higher up the stream. Suppose. they are entitled to use, for their own mills on the lower dam, half the water, which descends to it. what ground is there to say. that they have a right to draw off that half at the head of the mill-pond? Suppose, the head of water at the lower dam in ordinary times is two feet high, is it not obvious, that by withdrawing at the head of the pond one half of the water, the water at the dam must be proportionally lowered? It makes no difference, that the defendants insist upon drawing off only one fourth of what, they insist, they are entitled to; for, pro tanto. it will operate in the same manner; and if they have a right to draw off to the extent of one fourth of their privilege, they have an equal right to draw off to the full extent of it. The privilege. attached to the mills of the plaintiff, is not the privilege of using half, or any other proportion merely, of the water in the stream, but of having the whole stream, undiminished in its natural flow, come to the lower dam with its full power, and there to use his full share of the water power. The plaintiff has a title, not to a half or other proportion of the water in the pond, but is. if one may so say, entitled per my et per tout to his proportion of the whole bulk of the stream, undivided, and indivisible, except at the lower dam. This doctrine, in my judgment, irresistibly follows from the general principles already stated; and what alone would be decisive, it has the express sanction of the supreme court of Maine. in the case of Blanchard v. Baker, 8 Greenl. 253, 270. The court there said, in reply to the suggestion, that the owners of the eastern shore had a right to half the water, and a right to divert it to that extent: —"It has been seen, that, if they had been owners of both sides. they had no right to divert the water without again returning it to its original channel (before it passes the lands of another proprietor). Besides, it was impossible. in the nature of things, that they could take it from their side only. An equal portion from the plaintiff's side must have been mingled with all that was diverted."

A suggestion has also been made, that the defendants have fully indemnified the plaintiff from any injury. and in truth have conferred a benefit on him. by securing the water by means of a raised dam, higher up the stream. at Sebago Pond, in a reservoir, so as to be capable of affording a full supply in the stream in the dryest seasons. To this suggestion several answers may be given. In the first place. the plaintiff is no party to the contract for raising the new dam, and has no interest therein; and cannot. as a matter of right, insist upon its being kept up, or up-

on any advantage to be derived therefrom. In the next place, the plaintiff is not compellable to exchange one right for another; or to part with a present interest in favor of the defendants at the mere election of the latter. Even a supposed benefit cannot be forced upon him against his will; and, certainly, there is no pretence to say, that, in point of law, the defendants have any right to substitute, for a present existing right of the plaintiff's, any other. which they may deem to be an equivalent. The private property of one man cannot be taken by another, simply because he can substitute an equivalent benefit.

Having made these remarks, upon the points raised in the argument, the subject, at least so far as it is at present open for the consideration of the court, appears to me to be exhausted. Whether, consistently with this opinion, it is practicable for the defendants successfully to establish any substantial defence to the bill, it is for the defendants, and not for the court, to consider.

I am authorized to say, that the district judge concurs in this opinion. Decree accordingly.