(13 App. Div. 42.)

### AMSTERDAM KNITTING CO. v. DEAN et al.

(Supreme Court, Appellate Division, Third Department. January 12, 1897.)

WATER COURSES—INTERFERANCE WITH RIPARIAN RIGHTS.

An injunction will be granted against the building of a wall across one of two courses of a stream, so as to divert the water from the usual into the unusual course, even though the quantity of water is not diminished and the damage is nominal. Landon, J., dissenting.

Appeal from judgment on report of referee.

Action by the Amsterdam Knitting Company against Luther L. Dean and others to enjoin defendants from interfering with riparian rights. From a judgment for plaintiff, defendants appeal. Affirmed.

The plaintiff is the owner of certain premises, which include a portion of the bed of Chuctanunda creek, across which it maintains a dam, forming a mill pond on its lands, from which it derives water power for use in operating its mills. Northerly of and next above the plaintiff's premises on the creek, the defendants own premises, including the bed of the creek, and maintain a dam and pond, from which they derive water power for use in their mills. The boundary line between the two properties crosses an island in the creek which is about 170 feet long, about 70 feet thereof being below the line and belonging to plaintiff, and the balance being above the line and belonging to defendants. The plaintiff owns the land upon the easterly bank of the stream, and its ownership of the bed of the stream includes the bed of the channel west of the island up to the boundary line. The plaintiff uses the greater part of its lands within the bed of the creek above its dam as a mill pond and the defendants' race way has for many years entered plaintiff's mill pond at the northwesterly corner thereof, being at a point in the channel west of the island. The natural course of flow of the creek, from time immemorial down to the time of its obstruction by defendants in 1888, was in the channel on the westerly side of the island, to the extent that in ordinary water

the greater part flowed down this channel, and in low water substantially all of it so flowed, and thence into plaintiff's mill pond. In the year 1888 the defendants, for the purpose of improving their tail race, erected across the westerly channel, from the northerly end of the island to the main shore, an embankment or wall of stone, and have ever since maintained the same, thereby diverting the water of the creek from the westerly channel. The defendants, also, in or about the year 1888, lowered the channel on the easterly side of the island upon their own land. Substantially all the waters of the creek are now delivered upon the plaintiff's lands easterly of the island, except that, when the defendants' mill is running, the water from the tail race is discharged in the westerly channel. Since the diversion complained of, a greater quantity of floating débris is carried into the plaintiff's east bulkhead, and it is necessary to more frequently remove the same. Aside from this inconvenience, the plaintiff, as the referee finds, has sustained no actual damage by reason of the diversion. The referee also found, upon the request of the defendants, that the plaintiff's property has not been perceptibly injured by the erection of the embankment. The water, coming from the channel west of the island, enters the plaintiff's mill pond from a northwesterly direction. Coming from the channel east of the island, it enters from a southwesterly direction. The referee decided that the diversion and its continuance were unlawful, and in violation of the plaintiff's right to have the water come through its natural channel; that the plaintiff was entitled to nominal damages, and to equitable relief inasmuch as the diversion was a continuous injury, and successive actions may be brought as long as it continued, and legal remedies were inadequate to effect a restoration of the stream to its natural channel. The plaintiff was awarded a mandatory injunction for the removal of the embankment, and for the restoration of the stream to its natural course and level, so that in ordinary flow of water the greater part shall pass down the westerly channel, and in low water substantially all of it so pass.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

W. B. Dunlap, for appellants.
Edward P. White, for respondent.

MERWIN, J. The general rule is that a riparian proprietor may insist that the stream shall flow to his land in the usual quantity at its natural place and height. Gould, Waters, § 204, and cases cited. An upper proprietor may use the water while it runs over his land, but he cannot unreasonably detain it, or give it another direction, and he must return it to its ordinary channel when it leaves his estate. 3 Kent, Comm. 439. These general propositions are hardly disputed, but the defendants claim that, inasmuch as the plaintiff has shown only nominal damages, and its property has not been perceptibly injured by the erection of the embankment, it is, therefore, not entitled to equitable relief.

In Smith v. City of Rochester, 38 Hun, 612, affirmed without opinion in 104 N. Y. 674, it was held that the plaintiffs were entitled to an injunction restraining a diversion, even though it occasioned no actual damages to them. The principle was adopted which was laid down by Judge Story in Webb v. Manufacturing Co., 3 Sumn. 189, Fed. Cas. No. 17,322, that where the act done was such that by its repetition or continuance it may become the foundation or evidence of an adverse right, the case was a proper one for equity to interpose by way of injunction, though no actual damage was shown. The same principle was applied in Townsend v. Bell, 62 Hun, 306, 311, 17 N. Y. Supp. 210. See, also, Gilzinger v. Water Co., 66 Hun, 173, 21 N. Y. Supp. 121, af-

firmed 142 N. Y. 633, 37 N. E. 566. The doctrine of the Webb Case is adopted in Ang. Water Courses, § 449, and Gould, Waters, § 513. "Equity will interpose, by mandatory injunction, to compel the restoration of running water to its natural channel, when wrongfully diverted therefrom, at the suit of the party whose lands include either the whole or a part of such channel." · Corning v. Nail Factory, 40 N. Y. 191. Many cases may be cited where the injury complained of related to the quantity of water used by the upper proprietor, and the absence of actual damages was deemed an important element. They do not apply here.

Here, in substance, there is a permanent appropriation by the defendants of the main channel of the stream as it originally ran. The plaintiff has the legal right to have the water run in the channel west of the island, and enter its mill pond as it was accustomed to do. It has a right to have that channel open and unobstructed, and the water flow along its part of the island. The turning of the water to the easterly side of the island makes the distance shorter to the plaintiff's mill pond, and naturally increases the force with which the water enters upon plaintiff's premises, and affects, unfavorably to the plaintiff, the débris coming down the stream. True, the plaintiff gets all the water it is entitled to have, but does not receive it from the direction or in the state it naturally would flow. The fact that defendants get more benefit from the diversion than the plaintiff would get from the restoration is no answer to plaintiff's right to relief. Corning v. Nail Factory, supra. The rule laid down in the Webb Case is, I think, applicable to uphold the decision of the referee.          °

The judgment should be affirmed. All concur, except LANDON, J., dissenting.

LANDON, J. (dissenting). The plaintiff's damages are nominal. The permanent injury to the plaintiff's freehold is technical and nominal. We should, in view of the great injury to the defendants to result from the injunction, apply the maxim "De minimis non curat lex," and reverse the judgment, except as to six cents and costs.