(42 App. Div. 409.)

TOWNSEND v. BELL et al.

(Supreme Court, Appellate Division, Third Department.   July 6, 1899.)

INJUNCTION—POLLUTING STREAM.

> Where an upper riparian owner discharges coloring matter into a stream, rendering it impossible to use it for agricultural or domestic purposes, such use will be enjoined.

Appeal from special term, Ulster county.

Action by William H. Townsend against Winslow M. Bell and others.   Judgment for defendants, and plaintiff appeals.   Reversed.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

A. T. Clearwater, for appellant.

John J. Linson, for respondents.

PUTNAM, J.   This case was before the late general term in 1891 (62 Hun, 306, 17 N. Y. Supp. 210); and, as appears from the opinion of Learned, J., on substantially the same state of facts as established on the trial which we are now called upon to review.   The following statement is contained in the opinion of Learned, J.:

> "The plaintiff is the owner of a lot at Milton, on a stream emptying into the Hudson river.   The defendants own and occupy land upon the stream just above the plaintiff, having a mill for the manufacture of plush.   In that manufacture different colors are used, and from time to time water is discharged into the stream, colored by the dyes used in the manufacture.   The tubs in which the colors are used for dyeing are run off into the brook.   There are 11 or 12 tubs.   The cause of the daily discoloration is mostly the rinsing of the goods after they have been dyed.   This occurs twice a day.   The effect of this is to greatly discolor the water as it runs past plaintiff's premises.   Different colors —pink, red, and green—appear.   The color of the water is seen upon ducks which go into the stream.   Bottles of the water taken from the stream below the defendant's manufactory were produced on the argument of the appeal, showing much discoloration and flocculent matter, which subsided into a sediment when the bottles were allowed to stand still.   If the bottles presented on the argument contained fair samples of the water (and the testimony shows how the samples were taken), no one would be willing to use the water for any domestic or culinary purpose.   The fact of such discoloration is hardly disputed."

The trial court had found "that said use of said stream by the defendants is, under the circumstances of this case, reasonable, and in no way harms plaintiff."   The case, therefore, comes before us on substantially the same state of facts and on the same finding as when presented to the late general term.   In that court, the judgment rendered below in favor of the defendants was reversed, and it was held, in effect, that the use of the stream by the defendants was an unreasonable one, and that the plaintiff was entitled to the injunction prayed for in his complaint.   In his opinion, Learned, J., used the following language:

> "It seems to us that in the defendants' argument they have not observed the distinction between the use of the water of a stream and the extent of such use, permissible to all riparian owners, and the defiling or polluting the water so as to make it foul where it passes through land of riparian owners below. It is undoubtedly true that the riparian owner has the right to a reasonable

use of the water, although this may cause some injury to the owner below. For instance, using a stream for domestic purposes for watering cattle is permissible, although this may diminish the amount received by other riparian owners. So, too, the use for propelling machinery is permissible, although this may also diminish the amount which flows beyond. * * * But it may be said that the watering of cattle in a stream tends to pollute it, and even that the flow of water through a mill wheel might have that effect. But these are trivial and incidental matters. They are practically of no moment, and are only indirect effects of a proper use of the stream. Still more, perhaps, the washing of sheep in a stream might pollute it. But that is only an occasional occurrence, necessary and proper in agriculture, and temporary in its effect upon the water. It is entirely unlike the acts of the defendants. The question, then, is whether a riparian owner may lawfully discharge, day after day, foul and discolored water so great in quantity that it pollutes the stream as it passes through the land of the owner below. We think not. Such owner is entitled to have the stream in its natural purity."

It was further held at the late general term that the plaintiff was entitled to an injunction, although he was making no use of the stream, and could show no actual damage. See, also, on this question, opinion of Merwin, J., in Knitting Co. v. Dean, 13 App. Div. 42, 43 N. Y. Supp. 29, and authorities therein cited. I do not understand that the general term, when this case was before it the second time (70 Hun, 557, 24 N. Y. Supp. 193), intended to overrule the doctrine thus stated on the first appeal. On the second appeal, it appeared that the trial judge had refused to find whether or not the use of the water of the stream in question by the defendants was a reasonable one. It held that the defendants were entitled to a finding in that regard. This was all that was determined. The court did not review or consider the evidence, or determine whether, under the facts shown on the trial, a finding that the use of the water by defendants was reasonable was permissible, but merely that the defendants were entitled to have a determination of the trial court in that regard. I think, on the authority of the determination of the general term referred to, the same state of facts now appearing as was considered by that court, that the plaintiff was entitled to the injunction claimed in the complaint; and hence that the judgment should be reversed, and a new trial granted, costs to abide the event. All concur.