ROBERSON v. ROCHESTER FOLDING–BOX CO. et al.

(Supreme Court, Special Term, Monroe County.   July, 1900.)

LIKENESSES—USE FOR ADVERTISING—RIGHT OF PRIVACY—PROPERTY RIGHTS—
INJUNCTION—RECOVERY.

Since it is the right of a private person to keep her face concealed from public observation, the unauthorized display of a likeness of such a person in public places for advertising purposes, whereby criticism is invited, and unenviable notoriety attained, is an invasion of her right of privacy, as well as of her right of property in the use of such likeness, which may be enjoined, and damages recovered for injury to her reputation and mental and physical suffering caused thereby.

Action by Abigail M. Roberson, an infant, by her guardian ad litem, Margaret E. Bell, against the Rochester Folding-Box Company and another, to enjoin use of a likeness for advertising purposes, and for damages.   On demurrer to the complaint.   Overruled.

Milton E. Gibbs, for plaintiff.
Elbridge L. Adams, for defendants.

DAVY, J.   This is a demurrer to the complaint on the ground that it does not state facts sufficient to constitute a cause of action.   It is a rule of law well settled that a demurrer to a complaint on the ground of insufficiency admits all the material facts therein stated.   The plaintiff alleges in her complaint that without her knowledge or consent the defendants have made, printed, sold, and circulated about 25,000 lithographic likenesses of her for the purpose of profit and gain to themselves; that the likeness is made upon white, rough paper, which is about 22 inches wide and about 30 inches long, which contains a large profile view of the plaintiff.   The central portion of the paper above the likeness contains the words in large, plain letters, "Flour of the Family."   Below the likeness are the words in large capital letters, "Franklin Mills Flour," and in the lower right-hand corner, in small capital letters, are the words "Rochester Folding Box Company, Rochester, N. Y."   In the lower left-hand corner is a picture of a large flour chest, upon which appear the words "The Franklin Mills"; also in the same corner is a picture of a barrel, and a flour sack with the words printed thereon, "The Franklin Mills of Lockport, N. Y."   The complaint also alleges that the defendants have caused the said lithographs to be conspicuously posted and displayed in stores, warehouses, saloons, and other public places throughout the United States and other countries, and particularly in the vicinity where the plaintiff resides; that when plaintiff was informed of the use of her likeness she was made sick, and suffered a severe nervous shock, and was confined to her bed, and compelled to employ a physician; that she has been greatly humiliated by the scoffs and jeers of persons who have recognized her face in the lithograph above described; that her good name has been attacked, causing her great distress and suffering, both in body and mind; that by reason of the foregoing facts she has suffered damages in the sum of $15,000, for which sum she demands judgment; and also that the defendants be perpetually enjoined from making, printing, publishing, circulating, or

using in any manner whatsoever any picture, likeness, photograph, or lithograph of the plaintiff.

The principal question in this case is whether the defendants have the right to print and circulate lithograph copies of plaintiff's likeness for the purpose of profit and gain to themselves without her consent. The defendants contend that she is powerless to prevent it; that there is no law that can restrain them from doing the act complained of. The substance of this contention is that the feelings of the plaintiff may be outraged with impunity by any person who may desire to circulate her likeness as an advertising scheme, and there is no power in the courts to protect her. If such were a fact, it would certainly be a blot upon our boasted system of jurisprudence that the courts were powerless to prevent the doing of a wrongful act which would wound in the most cruel manner the feelings of a sensitive person. The infliction of mental pain and distress by the wrongful or unauthorized act of another gives a cause of action in many cases, such as libel and slander, and in all actions of tort where the wrongful act of another causes an injury. So, also, in an action for breach of contract of marriage, the law recognizes that the infliction of such distress and disgrace is ground for a recovery against the wrongdoer. I am aware that many of the text writers say that a person cannot recover damages for mental anguish alone, and that he can recover such damages only where he is entitled to recover damages upon some other ground. It will generally be found, however, that they are speaking of cases of personal injury. If injury to the feelings be an element of actual damage in slander, libel, and breach of promise cases, it would seem that it should be equally so in cases of this character. It has been remarked by a learned author that the mind is no less a part of the person than the body, and the sufferings of the former are sometimes more acute and lasting than those of the latter. The plaintiff's claim for equitable relief is not that of mere protection to wounded feelings, but the protection of her right of privacy, and the right of property in her own likeness. There may be a distinction, however, between private and public characters, as pointed out by Lord Cuttingham in Prince Albert v. Strange, 1 Macn. & G. 25. The moment one voluntarily places himself before the public, either in accepting public office, or in becoming a candidate for office, or as an artist or literary man, he surrenders his right to privacy, and cannot complain of any fair or reasonable description or portraiture of himself. It does not appear from the complaint in this action that the plaintiff is within the category of what might be denominated a public character. She is undoubtedly a young woman of rare beauty, and this she enjoys as a private citizen. It is very natural, if she is of a modest and retiring nature, that any such publicity would be extremely disagreeable and offensive to her. It is not impossible, therefore, that she has suffered and continues to suffer great mental distress and injury. It cannot be said that it is a pure fabrication or fancy. Any modest and refined young woman might naturally be extremely shocked and wounded in seeing a lithographic likeness of herself posted in public places as an advertisement of some enterprising business firm. To permit every person to use a lithographic likeness of the plaintiff to advertise their

business, and yet say there is no power in the courts to prevent it, would be asserting a proposition at war with the principles of justice and equity, and in violation of the sacred right of privacy. Every personal interest which she possesses must be regarded as private, especially when the public has acquired no right in them. Privacy is regarded as a product of civilization. It was unsought and unknown among the barbarous tribes. It implies an improved and progressive condition of the people in cultivated manners and customs with well-defined and respected domestic relations. The privacy of the home in every civilized country is regarded as sacred, and when it is invaded it tends to destroy domestic and individual happiness. It seems to me, therefore, that the extension and development of the law so as to protect the right of privacy should keep abreast with the advancement of civilization. When private and domestic life is invaded, which brings pain and distress of mind and destroys the pleasure and happiness of domestic life, the courts ought to have power to protect the individual from such an invasion. For years there has existed in the public mind a feeling that the law was too lax in affording some remedy for the unauthorized circulation of portraits of private persons, and this invasion of privacy has been keenly felt by the public.

It may be asked, how does the circulation of these lithograph advertisements affect the plaintiff in her right of privacy? It is evident that the acts of the defendants in printing and posting her likeness in public places as an advertisement to sell their flour invites public criticism, and brings her name into more or less unenviable notoriety, and, to a certain extent, inflicts injury to her reputation and feelings, especially if she desires a life of privacy, which she has a right to enjoy. Cooley, in his work on Torts (page 29), says, "The right of one's person may be said to be a right of complete immunity to be let alone." The law also gives to every person a right of security in his reputation. A good reputation is desired by every refined and modest woman. It gives her social consideration and standing among her neighbors, and surrounds her with an atmosphere of happiness which she could not enjoy if her right of privacy was invaded. The rule that an individual shall have full protection in person and property is as old as the common law. It seems to me that the sale and circulation of the lithographic copies of plaintiff's likeness without her consent is an invasion of her private rights. Every woman has a right to keep her face concealed from the observation of the public. Her face is her own private property, and no photographer would have a right to take advantage of the privilege of taking her photograph for her own private use, to make copies from the negative, and sell them to the public. It would be a breach of trust and confidence placed in the photographer, and, I might add, a breach of an implied contract that he would not sell or exhibit them to the public without her consent. The right of privacy was recognized in the early development of the English law. In Mayall v. Higbey, 1 Hurl. & C. 148, the plaintiff lent some photographs to a person who became insolvent, and, his assignee having offered the photographs for sale at auction, the defendant purchased them, and by printing from the negative he obtained copies which he published and sold. The plaintiff brought an action against

him, and recovered nominal damages. It was also held that the plaintiff was entitled to an injunction to restrain the defendant from taking or selling any more copies of the photograph. Lord Cutting-ham held in Prince Albert v. Strange, 1 Macn. & G. 25, that the pub-lication of a catalogue of private etchings is to be protected; that the right and property of an author or composer of any work, whether of literature, art, or science, in such work unpublished, and kept for his private use or pleasure, entitled the owner to withhold the same alto-gether, or so far as he may please, from the knowledge of others, and the court will interfere to prevent the invasion of this right. Tuck v. Priester, 19 Q. B. Div. 629, is very much in point. The plaintiffs were the unregistered owners of a copyright in a picture, and employed the defendant to make a certain number of copies for them. He did so, and he also made a number of other copies for himself, and offered them for sale in England for a lower price. The plaintiffs subsequent-ly registered their copyright, and then brought an action against the defendant for an injunction and for penalties and damages. The judges differed as to the application of the copyright acts to the case, but held unanimously that, independently of these acts, the plaintiffs were entitled to an injunction and damages. Pollard v. Photographic Co., 40 Ch. Div. 345, is another instance where an injunction was issued against the unauthorized exhibition or sale of photographs or other likenesses of private persons. The photographer, who had taken a negative likeness of a lady to supply her with copies for money, was restrained from selling or exhibiting copies, both on the ground that there was an implied contract not to use the negative for such purpose, and also on the ground that such sale or exhibition was a breach of confidence. Assuming that a photographer printed copies from the negative of plaintiff's likeness without her knowledge or consent, and had sold them as the photograph of some notorious woman, could the injured plaintiff have no redress? It would be unjust to hold that she could not. I am unable to discover what right the Franklin Mills Company have to use the lithographic likeness of the plaintiff as a trade-mark to sell its flour. As remarked by Folger, J., in Congress & Empire Spring Co. v. High Rock Congress Spring Co., 45 N. Y. 298, if one use the name of another for the purpose of securing to himself in the disposition of property advantages which belong to that other, the fraud is complete, and the remedy ought to be complete. If her litho-graphic likeness, owing to its beauty, is of great value as a trade-mark or an advertising medium, it is a property right which belongs to her. In Jay v. Ladler, 40 Ch. Div. 654, it was held that a man is not entitled, whether in trade or out of trade, to take that which is another man's. It seems to me that a photograph likeness of the plaintiff is her pe-culiar property, and no man can take it from her, or make use of it, without her consent. To permit every person to print and use the likeness of the plaintiff to advertise their business, and yet say there is no power in the court to protect her, would be asserting a proposi-tion at war with the principles of justice and equity. Are we to rely upon the courts for the protection of one's goods and chattels, and is there no power to protect the plaintiff's reputation or right of privacy

against circulating and posting these lithographs in public places, unless it be by the horsewhip or some other unlawful act? Mr. Justice Story observed in Webb v. Manufacturing Co., 3 Sumn. 189, Fed. Cas. No. 17,322, that actual perceptible damage is not indispensable as the foundation of an action. The law inquires whether there has been a violation of a right. If so, the party is entitled to maintain his action to recover damages for a violation of that right. The learned counsel for the defendants relies upon the case of Atkinson v. Doherty, 80 N. W. 285, 46 L. R. A. 219, decided by the supreme court of Michigan, and contends that it is controlling in this case. The court in that case held that an injunction against the use of the name and portrait of a deceased person on a cigar label cannot be granted at the suit of his widow, as the injury to the feelings in such a case is not one which the law can redress. The facts in that case are not analogous to the facts in this case. But, independent of that question, it seems to me that the decision in the Atkinson Case is in conflict with the views expressed by Judge Peckham in Schuyler v. Curtis, 147 N. Y. 434, 42 N. E. 22, 31 L. R. A. 286. He said that the relatives of a deceased person might maintain an action to enjoin the painting of a picture or the making of a statue of the deceased which would be regarded as inappropriate by reasonable people, because the use for which it was destined or the place where it was to be kept was obviously improper. In Corliss v. Walker Co. (C. C.) 57 Fed. 434, 31 L. R. A. 283, a bill was filed in the circuit court of Massachusetts by the widow and children of Mr. Corliss, celebrated as the builder of the great engine exhibited at the Centennial Exhibition held at Philadelphia, to restrain the publication of a biography and picture of himself. The court held that Corliss was a public man in the same sense as authors or artists are public men; that it would be a remarkable exception to the liberty of the press if the lives of great inventors could not be given to the public. But as to pictures or photographs of private individuals it held the rule was different. Colt, J., said:

"Independently of the question of contract, I believe the law to be that a private individual has a right to be protected in the representation of his portrait in any form; that this is a property as well as a personal right; that it belongs to the same class of rights which forbids the reproduction of a private manuscript or painting, or the publication of private letters, or of oral lectures delivered by a teacher to his class, or the revelation of the contents of a merchant's books by a clerk." He also said: "A private individual should be protected against the publication of any portraiture of himself, but where an individual becomes a public character the case is different. A statesman, author, artist, or inventor, who asks for and desires public recognition, may be said to have surrendered this right to the public."

After a careful consideration of the novel and interesting questions raised on the demurrer, I have reached the conclusion that the plaintiff is entitled to the relief demanded in her complaint. To refuse her that relief would be to admit that a wrong has been committed which causes her severe mental pain and distress and pecuniary injury, and yet the law can afford her no relief. Such a rule is contrary to my views of equity jurisprudence.

The demurrer, therefore, is overruled, with leave to the defendants to answer on payment of the costs.