The Storm King Paper Company, Inc., Appellant, *v.* The Firth Carpet Company, Respondent.

Second Department, October 4, 1918.

**Waters and watercourses — pollution of stream by sewage and waste from carpet mill — injunction — necessity of proof of past or present actual harm — prescription — deposit of washings of wool and spent dyes in stream — evidence.**

Where the pollution of a stream by sewage is so potential for harm that injury could result and there is reason to apprehend it if the water be used for drinking purposes or may otherwise reach the intestinal tract, the one causing such pollution is legally liable even though lower riparian owners have suffered no actual monetary damage or injury from disease or death.

If an owner makes such use of the water that no injury may result and no right be extinguished by prescription, the use is innocent and reasonable. But otherwise there is a wrong that may be enjoined without proof of past or present actual harm.

In a suit to restrain the pollution of a creek on which the defendant owns and operates a carpet mill 8,000 feet above plaintiff's paper mill, it appeared that the defendant had water closets available to its employees, the sewage from which was carried into the stream; that the washings of the wool used in its products entered the stream as well as the water in which the dyed yarn had been washed, and that the stream also receives impurities from tributaries and from a paper mill some five miles above defendant's mill.

*Held*, on all the evidence, that the defendant has not used the waters of the stream for a sufficient time to gain rights by prescription;

That the plaintiff may receive special and particular damage apart from the rights of the public by the discharge by the defendant of sewage

into the creek, and that the use of the stream by the defendant in respect to such sewage is unreasonable and improper;

That the defendant does not invade the plaintiff's rights or injure its property by depositing the spent dyes into the stream or otherwise, and that the plaintiff does not by discharge of waste and sewage into the stream contribute to the pollution in a substantial degree.

APPEAL by the plaintiff, The Storm King Paper Company, Inc., from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Orange on the 6th day of December, 1917, upon the decision of the court after a trial at the Orange Special Term.

*Edwin T. Taliaferro* [*Delavan A. Holmes* with him on the brief], for the appellant.

*A. Lee Olmsted* [*Frederick J. Collier* with him on the brief], for the respondent.

THOMAS, J.:

The action is to restrain the pollution of Moodna creek in the county of Orange, on which the defendant owns and operates a carpet mill, while 8,000 feet below it is plaintiff's paper mill. Defendant has water closets available to its 640 employees, whereof the effluent is carried through a tailrace into the stream. The washings of the wool used in its products enter the stream, as well as the water in which the dyed yarn has been washed. It appears that the stream with some tributaries receives impurities from the soils, farming and more settled regions through which it runs, as well as from a paper mill some five miles above defendant's mill. Professor Prescott, defendant's expert witness, found the stream highly polluted, as indicated by the following count of colon bacilli: Water from above defendant's mill, per cubic centimeter, 46,000; from the place of defendant's intake, 75,250; from defendant's raceway affected by sewage, 139,500, and he denounced the water as unfit for drinking purposes. Although he said that a proper sand filter would remove some 99.5 per cent of the bacilli, and mere contact with the water would not be injurious, the burden of filtering it and of avoiding its destructive effects by abstention would thereby fall upon the plaintiff and its employees. There

is no evidence of sewage at plaintiff's mill, visible or indicated by odor, but defendant elicited from Dr. Pacini, plaintiff's expert, an answer tending to show that in a cold flowing stream the life of the colon bacilli would be continued for many hours and for a long distance, and it may be assumed from the neglect to pursue the subject that both parties were convinced that the pollution at defendant's mill would persist to plaintiff's mill. The plaintiff's employees do not drink the water of the stream, but they come in contact with it. Nor does it appear that the water, polluted by sewage, used in the preparation of plaintiff's paper stock, is thereby injured, or that any actual monetary damage has ensued. For such reason defendant urges that plaintiff cannot enjoin the pollution. In its naked form the proposition is that in the absence of evidence of disease or death, or monetary loss from the presence of sewage, precipitated in a stream by an upper riparian owner, a lower owner on the stream has no remedy; that is, sewage conveying death is irremediable, if an owner of property abstains from exercising his right to use it, or, in using, cannot prove noxious effects. Thereby defendant contends for immunity in sowing the germs of typhus pending its actual and recognized arrival. Persistent infringement of a right is not restrainable until it has wrought harm; let men sicken and, maybe, die before the court will prevent the cause — that is defendant's position. I find no warrant for such attitude in reason or authority. The asserted rule of perceptible, actual damage as a condition of restraint of a wrong was condemned in *Webb* v. *Portland Manufacturing Company* (3 Sumn. 189), and this court has consistently followed the principles there stated (*Townsend* v. *Bell,* 62 Hun, 306; 70 id. 557; 42 App. Div. 409). In that case the Court of Appeals reversed the last decision of this court upon the ground that the jury had found that the defendant's use of the water was reasonable. (167 N. Y. 462.) Such a finding, if supported by evidence, settles controversies between riparian owners. There the use of the water was essential to a legitimate industry and found to be harmless, but the deposit of the fecal matter in the case at bar, while convenient, is not indispensable. In *Gilzinger* v. *Saugerties Water Co.* (66 Hun, 173, 175) it is said: " If no injury did

or *could result* to the plaintiff by this diversion, then he had no cause for complaint." In *Smith* v. *City of Rochester* (38 Hun, 612; affd., 104 N. Y. 674) Mr. Justice HAIGHT in a dissenting opinion was contented with *Webb* v. *Portland Manufacturing Company* (*supra*), with the modification that wrong must be such that the plaintiff be actually injured or "*may be injured*" by it, or, as restated, it must appear that he has been damaged, or "that there is reason to apprehend that he may be injured." If either statement be adopted, the defendant is in legal fault, inasmuch as the pollution is so potential for harm that injury could result and there is reason to apprehend it if the water be used for drinking purposes or may otherwise reach the intestinal tract. If an owner make such use of the water that no injury may result and no right be extinguished by prescription, the use is innocent and reasonable. But otherwise there is a wrong that may be enjoined without proof of past or present actual harm. The last mentioned cases in this State so decide, as do *Mann* v. *Willey* (51 App. Div. 169; affd., 168 N. Y. 664); *New York Rubber Co.* v. *Rothery* (132 id. 293, 296); *Amsterdam Knitting Co.* v. *Dean* (13 App. Div. 42; affd., 162 N. Y. 278); *Duesler* v. *City of Johnstown* (24 App. Div. 608). The subject may be pursued with profit by consulting the opinion of Mr. Justice LAUGHLIN in *Western N. Y. Water Co.* v. *City of Niagara Falls* (91 Misc. Rep. 73). The above decisions dispose of the defendant's proposition that the water is unfit from pollution before it reaches its mill, and that its increase of the pollution would be restrained without benefit to the plaintiff. The plaintiff has failed to show that the defendant by depositing the spent dyes in the stream makes an unreasonable use of it. The plaintiff produced evidence tending to show some discoloration of the water at its mill before it passed its filter. But it is a conclusive fact that after the water passes the filter it has an appearance undistinguishable from the pure spring water for which plaintiff has made provision. What becomes of the coloring matter in the course of such progress? It is conceded that the aniline dyes, of which plaintiff complains as hurtful to its stock in manufacture, cannot be removed by filtration. There is reason to conclude that plaintiff is mistaken in the accusation that the dyes are harmful or

even appreciably present at its mill. The learned chemical expert for the plaintiff testified that the acid in the aniline dyes used and sent into the stream by defendant discharges the ultramarine blue used by plaintiff to give proper coloring tone to its paper, but it appears from the testimony of Professor Matthews, at least an equally informed chemist, that the aniline dyes used are not acid dyes, although called such from the acid baths in which they are prepared, and that the water taken from defendant's tailrace will not discharge ultramarine blue, and experiments in court so establish. Moreover, the court was informed by actual analysis that the water in the stream is not acid, but alkaline, and that if the spent dyes were acid they would be neutralized by the water. It also appears that the plaintiff's chemist in his analysis used capryl alcohol, and the court was advised by other evidence that such alcohol itself had an element that would discharge ultramarine blue, thus illustrating how error may creep into investigation, and how opposite results obtained by men of technical knowledge may be composed. But there is another way of reaching demonstration of plaintiff's error. The defendant showed by the chemist Green, whose competency clearly appears, that upon analysis the water showed no acidity, but alkalinity, and that samples of water taken above and below defendant's mill show practically the same contents. It appears also that the skeins of yarn in defendant's mill are colored with the dyes mixed in paste, the color fixed by steaming, that they are carried in layers of sawdust to tubs and rinsed in water emptied in the stream. The water in the tub so affected by the washing does not stain the operator's hands, white cloth immersed in it, or the white yarn that is mingled with the colored yarn. Water is used to wash the oil cloth that covers the drums in which the dyes are applied, and the plaintiff's president took a sample of such washing and produced it in court, where the defendant dipped white woolen cloth into it without resulting discoloration. It is beyond reason, then, to suggest that the same material carried 8,000 feet in the running stream, the water of which after passing the filter has no appearance indicating unnatural color, discolors plaintiff's paper stock. So, whether the view of the chemist or the view of the layman be considered, there is no

just inference that the dyes affect the plaintiff's product. The plaintiff complains of microscopic fibers that clog the filters and ascribes them to the washing of defendant's wool. However, the reach of the stream and its varied exposure to substances renders plaintiff's conclusion as to their origin mere speculation, nor is it unreasonable that the defendant should wash the wool used in the water of the stream, nor is it at all probable that there would be such percentage of waste as to clog filters some one and one-half miles down the stream. If it be so, the defendant's self-interest would demand correction. It does not appear that the defendant's use of the water has been such in continuity and degree as to gain it the right by prescription either to pollute or to discolor the stream, or otherwise to affect it with impurities. It is decided that the defendant has not used the waters of the stream for a sufficient time to gain rights by prescription; that the plaintiff may receive special and particular damage apart from the rights of the public by the discharge by the defendant of sewage into the creek, and that the use of the stream by the defendant in respect to such sewage is unreasonable and improper; that the defendant does not otherwise invade plaintiff's rights or injure its property, and that the plaintiff does not by discharge of waste and sewage into the stream contribute to the pollution in a substantial degree.

The findings and judgment should be amended in accordance with this opinion, and as so amended affirmed, without costs.

JENKS, P. J., MILLS, PUTNAM and BLACKMAR, JJ., concurred.

Findings and judgment amended in accordance with opinion and as so amended affirmed, without costs. Order to be settled before Mr. Justice THOMAS.